[Criminal No. 171.   Filed March 26, 1904.]

[76 Pac. 458.]

JOHN EDWARDS, Defendant and Appellant, v. TERRITORY OF ARIZONA, Plaintiff and Respondent.

1. CRIMINAL LAW—MURDER—CORPUS DELICTI—ELEMENTS.—In felonious homicide the *corpus delicti* consists of two elements: First, the fact of death, as the result; second, facts and circumstances showing the criminal agency of the person charged with the crime as the means.

2. SAME — SAME — SAME—EVIDENCE—SUFFICIENCY.—Evidence reviewed and held sufficient to show that decedent was murdered and by the defendant.

3. SAME — SAME — SAME — SAME — CIRCUMSTANTIAL — COMPETENCY — SUFFICIENCY.—There being direct proof of the death, circumstantial evidence tending to show the defendant's criminal agency is competent and is sufficient where each fact necessary to be established has been proved by competent evidence beyond a reasonable doubt.

4. SAME—TRIAL—NEGLECT OF DEFENDANT'S COUNSEL—NOT GROUND FOR NEW TRIAL.—That the former counsel for the defendant, who tried the case in the court below, neglected to introduce evidence at hand favorable to defendant, or in other respects conducted the case in an unskillful manner, is no ground for a reversal.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Cochise. Fletcher M. Doan, Judge. Affirmed.

The facts are stated in the opinion.

W. P. Miller, for Appellant.

E. W. Wells, Attorney-General, for Respondent.

KENT, C. J.—About the 1st of December, in the year 1901, the dead body of a man was found about a mile southeast from Wilcox, in this territory, in a ravine or draw several hundred yards from the main road running southeast from Wilcox. The body was that of a Mexican from forty-five to fifty years of age, and, when found, was dressed and wrapped in a blanket and canvas, one end of the canvas being pulled together at the corners and tied with a baling wire; the body being completely covered with the canvas and blanket, excepting the feet, which were exposed, one foot without shoe or stocking, and one completely destroyed, apparently by animals. The state of the body showed that death must have occurred at least several weeks before the discovery. A deep wound or cut was found upon the head; the skull from above one eye down towards the opposite cheek having been, as described by witnesses, "smashed in—cut in some two or three inches,"— and, as testified to, the wound was such as might have been made with a blunt instrument, such as the head of an ax, and would have caused death. There was blood all about

the head and body. We think the testimony as to the position of the body, the place where it was found, the manner in which. it was wrapped, and its condition, was clearly sufficient to show that the deceased did not die a natural death, but that he met his death by violence at the hands of some person, and that the body after death had been tied up and placed in the position in which it was found.

The evidence introduced for the purpose of connecting the defendant with the killing was substantially as follows: The body was subsequently fully identified as that of one Eduardo de Sanchez. The wife of the deceased testified she last saw him alive on the 15th of October, 1901, when he left her at Metcalfe to go to Wilcox, taking with him seven burros and a bay mare belonging to him. Another witness testified that early in October, 1901, he saw the defendant, with a Mexican, on the Frisco River, going towards Wilcox, the two having a bunch of burros, a sorrel horse, and a bay mare; that some two weeks or more afterwards he again saw the defendant with the same burros and the same horse and mare, but this time the Mexican was not in his company; that the witness traded with the defendant, exchanging a wagon for the horse and the mare; that he then said to the defendant, "I don't want any Mexican coming in and claiming these horses," and the defendant replied, "No damn Mexican will ever claim them horses." Another witness testified that in the month of October, 1901, he saw the defendant and a Mexican answering the description of the deceased, with a bunch of burros,—seven or eight or ten,—with a horse and a mare, camped near a ranch about twenty-two miles north from Wilcox; that, in conversation with the defendant, the latter told him that he was going to Chiricahua Mountains to pack ore; that the burros belonged to the Mexican, but that he had the contract, and the Mexican was going to pack the ore; that the following morning the defendant and the Mexican went on south towards Wilcox; that some thirty-six hours afterwards the defendant returned, coming north, with the bunch of burros, the Mexican not being with him; and, when asked by the witness where he was going, the defendant said he was going to Clifton to pack wood; that he didn't get the contract to pack ore; that he had bought the Mexican's outfit and was going to Clifton. The witness further testified that the road and the distance to

Wilcox were such that a man with a bunch of burros could go to Wilcox and back to the place where the witness was within thirty-six hours. Another witness testified that somewhere towards the end of October, 1901,—the date being uncertain,—he saw the defendant and a Mexican camped some hundred yards or so from the ranch of one Fulghum, a quarter of a mile southeast from Wilcox. The body of the deceased was subsequently found about three quarters of a mile southeast from this camp. There was no direct evidence from any witness that the body found was that of the Mexican seen by the witnesses in the defendant's company, and the most that can be said of the descriptions given of the Mexican seen with the defendant is that they correspond in general, as to age and appearance, with the descriptions given of the deceased in that respect. A clerk in a store in Wilcox testified that on the 25th of October, 1901, he saw the defendant passing his store in Wilcox, going north, with seven burros, and, in response to a question as to where he got the burros, the defendant replied that he had owned them for a long time; that he was going with them to Clifton. The witness testified that he asked the question of the defendant because a short time before the defendant had told the witness that he owned nothing in the world but two horses. A woman testified that about the 26th or 27th of October, 1901, the defendant came to her house, fifteen miles from Clifton, for dinner. He then had six or seven burros; that, as he was leaving, he came back for an ax he had forgotten, and said that he had killed one Mexican with it, and might have to kill another, and offered to show the witness the blood-stains on the ax. Other witnesses testified to the sale of seven burros by the defendant, and gave descriptions of them corresponding in general with the description given by the wife of the deceased of the burros owned by him. At the time of his arrest, on January 8, 1902, a witness testified that the defendant stated that he had purchased the burros from a Mexican, and gave the Mexican's name as Sanchez; that he (the defendant) had owned the burros for two years, and that he had brought them down to Wilcox from St. Johns or somewhere in that country; that he had not seen Sanchez for two years; that the Mexican he was with near Wilcox was named Morales. The defendant introduced two witnesses, mother and daughter,—the former

the wife of the defendant,—who testified that they met the defendant on the twenty-fifth day of October, 1901, on the road some fifteen miles from Clifton, Clifton being approximately seventy-five miles from Wilcox; and the mother testified that she had not seen the defendant for a month or so previous to that time; that she went with the defendant on to Clifton, and that on the day following the day she met the defendant they were married in Clifton by a Mr. Wright. A marriage license dated October 26, 1901, together with a certificate of marriage showing that the defendant and the witness were married on October 30, 1901, by one A. Wright, a justice of the peace, was also introduced. There was no other evidence introduced by the defendant.

In felonious homicide the *corpus delicti* consists of two elements: First, the fact of death, as the result; second, facts and circumstances showing the criminal agency of the person charged with the crime, as the means. *Ruloff* v. *People*, 18 N. Y. 192. In the case at bar the death and the identity of the deceased were fully established by direct proof, and the facts respecting the condition of the body justified the court in submitting the question to the jury as to whether death was the result of a criminal agency, and warranted the jury in so finding. The evidence connecting the defendant with the commission of the crime, apart from his own statements, is purely circumstantial. There being direct proof of the death, circumstantial evidence tending to show the defendant's criminal agency is competent. The question that arises is as to its sufficiency. The rule in that respect is that each fact necessary to the conclusion sought to be established must be proved by competent evidence beyond a reasonable doubt. All these facts must be consistent with each other and with the main fact sought to be proved, and the circumstances, taken together, must be of a conclusive nature, leading, on the whole, to a satisfactory conclusion, and produce, in effect, a reasonable moral certainty that the accused, and no other person, committed the offense charged. The facts proved must not only point to the guilt of the person charged, but they must be inconsistent with his innocence. *Commonwealth* v. *Webster*, 5 Cush. 295, 52 Am. Dec. 711; *People* v. *Bennett*, 49 N. Y. 137. We think the facts adduced upon the trial, together with the statements testified to as being made by the

defendant, bring the case within the requirements of the rule, and warranted the submission to the jury of the question whether the crime was committed by the defendant, as charged, and that the verdict reached by them is fairly supported by the evidence.

In his brief, counsel for the appellant suggests that certain testimony given by witnesses for the prosecution is contradictory of evidence given by them on a former trial. This evidence was not sought to be brought out in the court below, nor is the evidence upon the former trial before us, nor any error assigned in respect thereto. We can therefore give it no consideration. Nor is the fact, if it be a fact, that the former counsel for the defendant, who tried the case in the court below, neglected to introduce evidence at hand favorable to the defendant, or in other respects conducted the case for his client in an unskillful manner, ground for a reversal of the judgment in this court. We perceive no error in the record, and the judgment of the district court is therefore affirmed.

Sloan, J., and Davis, J., concur.