[Criminal No. 573. Filed January 24, 1924.]

[222 Pac. 414.]

# FRANK LA GRANGE, Appellant, v. STATE, Respondent.

1. CRIMINAL LAW—APPELLATE COURT WILL NOT EXAMINE WEIGHT AND SUFFICIENCY OF EVIDENCE, WHERE THERE IS SUBSTANTIAL EVIDENCE.—Where there is any substantial evidence upon which the verdict of the jury is based, the mere weight and sufficiency of the evidence will not be examined by the appellate court.

2. CRIMINAL LAW—COURT MAY SET ASIDE VERDICT FOR TOTAL LACK OF EVIDENCE OF ESSENTIAL ELEMENT OF CRIME. — If there is a total lack of evidence of any essential element constituting the offense charged, the appellate court may set the verdict aside.

3. HOMICIDE—EVIDENCE AS TO IDENTIFICATION OF BODY HELD SUFFICIENT.—In prosecution for murder, evidence *held* to sustain conviction as against the contention that the evidence did not sufficiently identify the body found as that of the person whom defendant was charged to have murdered.

4. HOMICIDE — REMAINS MAY BE IDENTIFIED BY CIRCUMSTANTIAL EVIDENCE.—In a murder prosecution, the remains found need not be identified by direct and positive testimony; circumstantial evidence being sufficient.

5. WITNESSES — DEFENDANT HELD PRECLUDED FROM COMPLAINING OF CROSS-EXAMINATION AS TO HIS LIFE, MARRIAGE, ETC., IN VIEW OF DIRECT EXAMINATION.—A defendant, who testified on direct examination as to his age, occupation, marriage, and as to various transactions with his wife, could not complain of cross-examination as to his life for several years preceding the trial, his marriage, and his living with his wife before the date of the

---

1. See 2 R. C. L. 193.

2. See 2 R. C. L. 197.

4. Necessity, for conviction, that circumstantial evidence exclude every reasonable hypothesis except guilt of defendant, see note in Ann. Cas. 1913E, 428.

4. Sufficiency of circumstantial evidence to identify remains found as those of person charged to have been killed, see note in 7 L. R. A. (N. S.) 181. See, also, 13 R. C. L. 739.

4. Attempt to conceal or dispose of body as evidence connecting accused with homicide, see note in 2 A. L. R. 1227. See, also, 13 R. C. L. 920.

5. See 28 R. C. L. 604.

marriage, even though the cross-examination covered chronologically a somewhat longer period than the direct examination.

6. HOMICIDE—EVIDENCE THAT DECEASED HAD DEBTORS WHO NEVER HAD BEEN CALLED ON TO PAY THEIR DEBTS SINCE HIS DISAPPEARANCE HELD ADMISSIBLE. — In homicide prosecution involving an issue as to whether the body found was that of the man whom the defendant was claimed to have murdered, and who had disappeared, evidence that deceased had debtors who had never been called upon to pay their debts since his disappearance, *held* admissible.

APPEAL from a judgment of the Superior Court of the County of Yavapai. John J. Sweeney, Judge. Affirmed.

Mr. J. E. Russell and Mr. Joseph C. Furst, for Appellant.

Mr. John W. Murphy, Attorney General, and Mr. A. R. Lynch, Mr. Earl Anderson, and Mr. E. W. Mc-Farland, Assistant Attorneys General, for the State.

LYMAN, J.—Walter Steinbrook left his home at Hooper, thirty-two miles southerly from Prescott, Arizona, in the afternoon of December 26, 1920, telling the man with whom he lived that he was starting for Prescott, to be gone four or five days, to have some ore which he was taking along assayed, and would reach there that same evening, but if it became too cold he might stop on the road at Turkey Creek and spend the night. Before starting he borrowed a key to a building that he expected to use during his absence, promising to return it. Near to the roadway which he would travel over on his way to Prescott, and about two miles from Hooper, lived Franklin La Grange, the appellant, who had told Steinbrook the day before to stop at his house and get a package which he (La

6.  See 13 R. C. L. 906.
    See 17 C. J. 254; 30 C. J. 150, 288; 40 Cyc. 2505, 2510.

Grange) had brought out from Prescott. Steinbrook was about forty-five years old, strong and able-bodied.

He traveled on horseback, and reached the home of La Grange that evening. This case was tried in February, 1923. Up to that time no word had been received from or about Steinbrook by his relatives who resided in that vicinity, including a sister, or the man with whom he lived, or his neighbors, among whom he had resided for forty years or more. His account in a bank at Prescott, containing upwards of $5,000 remained untouched, and his banker had no word from him. A number of debtors residing in and about Prescott, who owed him sums of money ranging from a few dollars to $1,600, were never called upon to pay. A contract which he had recently made to work a mine near Hooper was unperformed. The key which he had borrowed was never returned. No one has ever heard of Steinbrook alive since, if we except a woman, a comparative stranger to Steinbrook, who says she saw him in Prescott in February, 1921.

The day after Steinbrook started for Prescott, the appellant La Grange stopped at the home of McLaren, at Turkey Creek, who lived ten or twelve miles from the home of La Grange, and on the road which Steinbrook would have traveled on his way to Prescott, having with him the horse, saddle and bridle with which Steinbrook had started on his journey. La Grange told McLaren that Steinbrook had stopped at his house the evening before, left his horse and saddle there, with instructions that it be given McLaren as a present from him, and that Steinbrook had left La Grange's house on foot with his luggage, expecting to catch a ride somehow or other into Prescott. La Grange at the same time offered to sell McLaren his home place for $150. La Grange did succeed in selling his place within the next few days for $150, said to have been a small fraction of its actual value, and left that part of the country. He never returned until brought back under arrest, having trav-

eled about from one place to another, always assuming a fictitious name, using several different names.

Some men who went to the La Grange place two or three days after Steinbrook had disappeared noticed a smoldering fire not far from the house, and commented upon the peculiar odor that arose from it. La Grange, by way of explanation, stated that he had been burning spent mash from which he had distilled liquor.

During the month of February following, prospectors noticed a foul odor from a mining shaft located about a mile from the La Grange house, with many flies in and about it. They reported these circumstances to persons in that sparsely settled locality. No investigation was made, however, of the contents of this hole until the latter part of June, when a nephew of Steinbrook's with other men went to the place indicated, and found a shaft twelve to fourteen feet deep, several feet of muck in the bottom, with a windlass and the framework upon which it had stood, and some tools lying on top of the muck. Upon cleaning out the hole there was found at the bottom, under the muck, wrapped in gunnysacks, a portion of the skull and the trunk of an adult male. In the back side of the skull was a bullet hole. These remains were in an advanced state of decay, with both legs, both arms, three ribs, and the front part of the cranium and the face, except a small part of the lower jaw, missing. Steinbrook in his lifetime had a number of distinguishing marks upon his body, a protuberance on one rib as a result of a break, a flattened nose, also the result of a break, a stiffened and crooked arm, a crooked finger, a broken instep, peculiar misshapen finger-nails, a scar on the face, one missing tooth, and teeth in which there were metal fillings. All of the parts of his body which bore these distinguishing marks, with the exception of two teeth contained in a portion of the jaw found with the skull, had been re-

moved from the body before it was deposited in the sack. Upon the premises lately occupied by La Grange there was found a lot of ashes, partly buried under ten or twelve inches of earth. The roots of a tree standing by the hole had been burned by the ashes. Some other ashes were found placed around the fruit trees on the premises. Among these ashes were found a number of fragments of human teeth, and metal fillings from teeth, charred parts of bones from the hand and arm, shoe buckles, buttons, pieces of cloth.

The appellant was found guilty of murder in the first degree, and his punishment fixed at life imprisonment. The appeal attacks this verdict upon the ground, among other things, that it is not warranted by the evidence, because the identification of the remains found in the mining shaft was insufficient. Where there is any substantial evidence upon which the verdict of the jury is based, the mere weight and sufficiency of it is not to be examined by this court. If there is a total lack of evidence of any essential element constituting the offense charged, the court may set aside the verdict. Appellant claims that the proof in this instance is defective because failing to completely identify the body. The remains found in the mining shaft were shown to have been those of an adult male. A nephew, an intimate acquaintance of the deceased, testified, "I think I know whose body it was. I think it was that of Walter Steinbrook." And he further testified that he based his opinion upon the color, character, amount of hair, and general appearance of the skull. A sister of the deceased testified that the skull looked like her brother's skull, and that the hair was the same color. She also testified that Steinbrook had lost a tooth next to the wisdom tooth on the left side of the lower jaw, and that the teeth on either side of it were filled. The fragment of a jaw found had all these peculiarities. No one attempted to say that there was any lack of similarity

between these remains and the body of the deceased. The evidence of identification, so far as it went, was wholly undisputed.

This character of identification is objected to as improper, because stated in the form of an opinion.

"On questions of identity, it is not necessary that a witness should swear pointedly; it is only necessary and is of common occurrence, for them to swear that they believe the person to be the same, and the degree of credit to be attached to their evidence, is a question for the jury." *State* v. *Dickson,* 78 Mo. 438; *Greenwell* v. *Crow,* 73 Mo. 638; 1 Greenleaf Ev. 440; 3 Greenleaf Ev. 133.

It is not necessary in such cases that the remains be identified by direct and positive testimony. Wills, Circumstanial Evidence, 164.

The identification of these remains by the direct testimony of witnesses was, however, the least significant portion of the evidence tending to identify these remains as those of the deceased Steinbrook. There is a large volume of circumstantial evidence tending and pointing to the same result. The bullet hole in the back of the skull, the mutilated head, the trunk shorn of its limbs and divested of all clothing, indicate that someone with criminal intent had used his best skill and judgment in removing all trace of identification. It could hardly have been accident that the identifying rib, the crooked arm, the broken foot, and peculiar fingers, were all removed. It is also a circumstance of identification that the particular portions of the body not found with the rest of the remains in the mining shaft, such as teeth and portions of the hand and arm, were found among the ashes of the La Grange house. The same is true of the shoe-fasteners, eyelets, and buttons from the clothing, and the pocketknife with the handle burned off, and identified as the property of Steinbrook. Perhaps the most significant of all is the circumstance that these remains were found at the place where Steinbrook was last known

to have been, and the time of their appearance there coincident with the time of his disappearance. Men do not ordinarily vanish from their haunts of a lifetime, leaving no word and no trace. Human remains are not found in the ashes of every fire.

In the case of *State* v. *Williams,* 52 N. C. 446, 78 Am. Dec. 248, the only remains found were some fragments of human bones, hair-pins, and a hook and eye. The identification of these remains with the deceased was established by purely circumstantial evidence. Other precedents of a like character are *People* v. *Alviso,* 55 Cal. 230; *State* v. *Martin,* 47 S. C. 67, 25 S. E. 113; *Wilson* v. *State,* 43 Tex. 472; *Perovich* v. *United States,* 205 U. S. 86, 51 L. Ed. 722, 27 Sup. Ct. Rep. 456 (see, also, Rose's U. S. Notes); *Commonwealth* v. *Williams,* 171 Mass. 461, 50 N. E. 1035; *State* v. *Barnes,* 47 Or. 592, 7 L. R. A. (N. S.) 181, 85 Pac. 998.

There not only was some evidence upon which the jury's verdict would be conclusive, but there was abundant evidence of the identity of the remains found.

The appellant also finds fault with some of the evidence brought out in his cross-examination by the county attorney. The appellant was asked on cross-examination concerning his doings and whereabouts for a period of several years preceding the trial. There appeared in the course of this examination the date when he was married, where he met his wife, and when they lived together, which was before the date of marriage. The appellant had already been asked on direct examination concerning his age, his occupation, his marriage, various transactions with his wife, and his residence. Whatever may have been the legitimate scope of cross-examination, in the absence of a direct examination upon these matters, the appellant is in no situation to complain. While the cross-examination covered chronologically a somewhat longer period than the direct examination, it touched only

such things as his counsel by direct examination had opened the door for.

In a very recent case, this court stated the rule of cross-examination as follows:

"It was perfectly proper for the county attorney to question the accused concerning his memory, motives, history, or any other matter affecting his credibility, so long as he did not pursue a course of cross-examination solely to cast insinuations upon the defendant." *Garrett* v. *State,* 25 Ariz. 508, 219 Pac. 593.

The rule has sometimes been stated much more broadly than that. *Dunn* v. *State,* 162 Ind. 174, 70 N. E. 524.

Appellant also objected to the introduction of evidence showing that the deceased had debtors who never had been called upon to pay their debts since his disappearance. This evidence was highly pertinent tending to show the death of Steinbrook. The objection to it is wholly frivolous.

From examination of the reporter's transcript, it appears that the learned trial judge was especially careful and impartial in his conduct of the trial. The appellant was represented by able and alert counsel, who overlooked no opportunity to assert the rights of the accused, and in some instances where the court was in doubt secured greater advantage than he was strictly entitled to. The appellant cannot complain that he did not have a fair trial. The evidence abundantly warranted its submission to the jury, whose verdict could hardly have been otherwise than it was.

The judgment is affirmed.

McALISTER, C. J., and ROSS, J., concur.