[Criminal No. 762.   Filed November 4, 1931.]

[4 Pac. (2d) 388.]

## DURWARD LEE HOUSTON, Appellant, v. STATE, Respondent.

Messrs. Gillum & Locke, for Appellant.

Mr. K. Berry Peterson, Attorney General, Mr. Renz L. Jennings, Assistant Attorney General, and Mr. Lloyd J. Andrews, County Attorney, for the State.

ROSS, J.—The defendant Houston appeals from a verdict of guilty of the murder of John P. Easterday and a life sentence thereon.

He claims, in the first place, that the *corpus delicti* was not proved and, in the second place, that there was no evidence to connect him with the offense, except that of a confessed accomplice, under the law made insufficient to sustain a verdict of guilty. These questions were raised by motion for an instructed verdict at the close of the state's case and by a motion for new trial.

After defendant had perfected his appeal, he presented to the trial court a motion to set aside the judgment of conviction, and supported such motion with an affidavit of the accomplice to the effect that his testimony upon the trial accusing defendant was false; that in fact defendant had not participated in the crime, but that affiant and two others, by name "Sid" and "Goldie," had committed it. The overruling of this motion is assigned as error.

The case is very unusual in its facts. It originated in a robbery of three men, "hoboing" their way across the country on a freight train, by three other hobos traveling on the same train. There were from twenty to forty of these gentry on the train, traveling singly or in pairs. Their meeting in their wanderings was therefore only casual, so that they generally did not know each other and in testifying were unable to identify by name or description some of the parties alleged to be participants in the crime or the victims thereof.

Counsel for defendant have aided us much by their very excellent statement of the facts and the law applicable thereto, but we cannot sustain their contentions.

The evidence tending to show the *corpus delicti* and defendant's connection therewith is as follows: On the morning of March 15, 1931, there was found on the right of way of the Southern Pacific Railroad Company, about two and one-half miles west of Sentinel, in Maricopa county, Arizona, a person, later identified as John P. Easterday, suffering from a fractured skull, due to external violence, and otherwise generally bruised and shocked. He was unconscious when found and continued so until he died on March 17th. He was lying twenty or thirty feet from the railroad track on the south side thereof. The track was raised at this point by a "fill," some seven feet high, and along beside it it was rocky. On the person of the unconscious man was found the discharge of "John P. Easterday" from the United States Army. He was also identified by a brother, who saw him after he was injured.

On the night before Easterday was found, along about eight or nine o'clock, a west-bound freight train passed that point, traveling, as one witness put it, at thirty-five to forty miles an hour. There were on that train, beating their way, from twenty to forty-two persons. Defendant Houston was one of them. He and one Charles Sears as traveling companions had started out a few days before from defendant's home in Columbus, Georgia, to bum their way to California, where defendant testified he had employment. They were together on the sixteenth day of March at Indio, California, when arrested, having reached that point on the same train. Sears testified at the trial that shortly after the freight train left Gila Bend, and after dark, he and defendant and

another person (identified in the record as "Sid") held up three of their fellow-passengers. He said the three victims were riding on the west end of an oil tank car: One, by name P. F. Toher, on the right west end; one, by name, Herbert Race, near the middle end; and another man, name not known or given, on the left west end of the car. That he searched Toher, taking from him a dollar and a half; that "Sid" "went through" the other two and pushed or forced them from the moving train; that the man on the extreme left was first thrown or pushed off, and then Race was thrown or pushed off.

Several witnesses testified that while this holdup was going on a man sat on the east end of the refrigerator car, just in front of the oil tank car where the holdup took place, with a flash-light and a pistol pointed at the victims, and said, "Stick 'em up!" Sears said this person was the defendant Houston.

Toher and Race were two of the men held up and robbed. They testified and corroborated Sears. Toher testified that while he was being robbed by Sears, the man identified in the record as "Sid" robbed the other two victims and pushed or forced them from the moving train; that he did not know who the first man pushed off the train was, but after he was pushed off Race was pushed off. Race testified, and in the main his testimony was the same as that of Toher. Race said he hung on to the rung of a ladder on the side of the car and that his shoes were dragged off on the railroad ties before he released his hold and fell to the ground. All witnesses agreed that both were pushed off on the south side, on which side Easterday and the shoes of Race were found. These two witnesses (Toher and Race) saw the man sitting on the end of the refrigerator car holding a pistol and flash-light on them and heard him command them to, "Stick 'em up!" but did not

recognize him. The morning following, Race's shoes were found along the track about a half mile west of where Easterday was found.

It will be observed that no witness actually identified Easterday as one of the men forced from the train. Race was one of them, and the other, the state insists, was Easterday. Just before Race was thrown from the train, someone else was thrown off. The following morning Easterday was found, mortally wounded, a short distance east of where Race was thrown off and where his shoes were found.

These physical facts corroborate the witnesses' statements placing Race's ejectment just after that of the other victim.

Easterday had a fractured skull and was bruised and severely shocked. Along the track where he was found it was rocky. Injuries such as his are of the kind one would naturally receive if thrown from a train traveling thirty-five miles an hour into a surface covered with rocks. It is hardly probable that the man thrown from the train just before Race was thrown escaped injury and left the scene, and that Easterday was thrown from some other train by other persons at a different time and received his injuries, or that he was otherwise injured and left at that point.

We think the evidence was sufficient to go to the jury on the question as to whether Easterday was the person thrown from the train, and whether by reason thereof he received the injuries that caused his death. In other words, there was sufficient evidence to establish the *corpus delicti* if the jury believed it.

But it is said there is no evidence that defendant participated in the commission of the crime except that of Sears, a confessed accomplice. It is true the only witness who said the defendant had anything to do in the actual commission of the offense was

Sears. He said the defendant was the man who sat on the refrigerator car, just in front of the holdup car, and with gun leveled or pointed at the victims ordered them to "Stick 'em up," while his accomplices robbed them. Toher and Race said someone did that very thing, but they did not know who it was. Unless there is other evidence in the record than that of Sears connecting defendant with the commission of the robbery and assaults, the conviction under our laws cannot be sustained. Section 5055, Rev. Code 1928; *Reynolds* v. *State,* 14 Ariz. 302, 127 Pac. 731; *Leverton* v. *State,* 23 Ariz. 482, 205 Pac. 321; *Jenkins* v. *State,* 23 Ariz. 485, 205 Pac. 322; *Taylor* v. *State,* 35 Ariz. 317, 277 Pac. 978. If, however, there be evidence, either direct or circumstantial, which in itself tends in some degree to implicate the defendant or to point to him as a participant in the crime, it would be sufficient to take the case to the jury. In such case it would be evidence independent of the testimony of the accomplice tending to connect defendant with the commission of the offense.

In addition to the admitted fact that defendant and Sears were traveling companions and that they were on the train when the holdup took place, it was shown that they possessed a pistol or revolver, a part of which was carried by one and a part by the other "so (defendant explained, according to the witness Halstead) that if they were caught with it, either of them, they would not have a complete gun." When the train stopped at Gila Bend, many of the hobo passengers got off, and as the train pulled out, and before it had attained much momentum, got back on. It was a cold night and most of them sought shelter in the refrigerator car.

Witness Albert Halstead testified that he tried to get defendant Houston, Sears, "Sid," and one "Goldie" to go with him into the refrigerator car soon after they left Gila Bend; that at the time

"they were all sitting there on an oil tank car," where they remained. It could not have been very long after this that the robbery was perpetrated, in which Sears and "Sid" unquestionably took a very prominent and active part, as told by their victims Toher and Race. The question suggests itself: What was defendant's purpose in remaining with "Sid," Sears, and "Goldie" on the oil tank car, instead of going into the refrigerator car out of the cold? The robbery was a preconcerted matter as shown by the assignment of particular things to each of the participants to effect it. It seems to us when all the facts and circumstances are considered together they tend very strongly, independent of the testimony of the accomplice Sears, to connect defendant with the actual commission of the offense.

At the time defendant made his motion to set aside the verdict and judgment, he had perfected his appeal to this court, thereby depriving the trial court of all jurisdiction "except to perform necessary acts in furtherance of appeal." *Sam* v. *State*, 33 Ariz. 421, 265 Pac. 622.

The overruling of such motion was not error.

The judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.