[Criminal No. 910. Filed October 20, 1941.]

[118 Pac. (2d) 91.]

## THE STATE OF ARIZONA, Appellee, v. GEORGE BENHAM, Appellant.

131

Mr. Joe Conway, Attorney General, and Mr. W. E. Polley, Assistant Attorney General, for Appellee.

Messrs. Kimble & McLean, for Appellant.

ROSS, J.—The defendant was convicted of manslaughter and he has appealed.

The charging part of the information is in these words:

"*In the Name and by the Authority of the State of Arizona,*

"*George Benham* . . . is accused . . . by this information of the crime of *Manslaughter,* a felony, committed as follows, to-wit:

"The said *George Benham,* on or about the 14th day of October, 1940, and before the filing of this information, at and in the County of Pima, State of Arizona, did then and there unlawfully and negligently kill one Thelma Haines, a human being. . . . "

The specifications of the grounds of appeal are of rulings of the court in the course of the trial and the sufficiency of the evidence to support the verdict and the judgment. The first ruling complained of is the court's order denying defendant's request that the county attorney be required to furnish him a bill of particulars.

Defendant was arraigned November 25, 1940, and on that day entered his plea of not guilty. After three settings, the last being March 25, 1941, the case came on for trial, the jury roll was called by the clerk and then, for the first time, defendant made his request for bill of particulars. The code of criminal procedure, section 44–711, Arizona Code 1939, provides that an indictment or information may charge an offense (1) by its common-law or statutory name, (2) by reference to the section or subsection of the statute creating the offense, and (3)

"(b) By stating so much of the definition of the offense, either in terms of the common law or of the statute defining the offense or in terms of substantially the same meaning, as is sufficient to give the court and the defendant notice of what offense is intended to be charged."

Section 44–712 provides that when the offense is charged as permitted in the preceding section "but fails to inform the defendant of the particulars of the offense sufficiently to enable him to prepare his defense, or to give him such information as he is entitled to under the constitution of this state, the court may, of its own motion, and shall, at the request of the defendant, order the county attorney to furnish a bill of particulars containing such information as may be necessary for these purposes." It also provides that when the court deems it to be in the interest of justice that the facts not set out in the charge or any previous bill of particulars should be furnished, it may order the county attorney to furnish a bill of particulars containing such facts. Then follows this provision:

"In determining whether such facts and, if so, what facts, should be so furnished, the court shall consider the whole record and the entire course of the proceedings against the defendant." Sec. 44–712.

In view of the simplified forms of indictment and information under the new criminal procedure, bills of particulars assume an important place in criminal trials. What was formerly essential to allege in the indictment or information may now be supplied to a defendant in a bill of particulars.

The information charged the offense by name and also in accordance with subdivision (b), section 44–711, *supra*. It does not set out the means used by defendant to commit the homicide, nor was it necessary that it should. Sec. 44–717.

■ The defendant takes the position it was the mandatory duty of the court to order the county attorney upon his request to furnish him a bill of particulars. From the language of section 44–712, it is obvious that it was intended a defendant should not be forced to trial without first being fully informed of "the nature and cause of the accusation against him," as provided in section 24, article II of the state Constitution, and that such information should be "of the particulars of the offense sufficiently to enable him to prepare his defense." However, the bill of particulars is required to convey only "such information as may be necessary for these purposes." (Sec. 44–712.) The rule does not make it imperative to furnish a bill of particulars but requires it only when it is necessary, and it would seem that the question of the necessity for the defendant to be further informed of the particulars of the offense would rest in the sound discretion of the court. If, for instance, through earlier proceedings in the case a defendant is already in possession of all the facts and particulars of the crime, it would not be necessary to furnish him a bill of particulars and a refusal by the court to order the county attorney to furnish one would not be an abuse of discretion and error. The section (44–712) authorizes the court in determining what facts, if any, should be furnished a defendant, to "consider the whole record and the entire course of the proceedings against the defendant."

In all felony charges the accused must be given a preliminary trial and, if he does not waive the preliminary, the testimony in all cases, upon the request of the county attorney, must be reduced to writing or taken in shorthand and transcribed. (Sec. 44–316.) At such a proceeding ordinarily a defendant will be

fully informed as to all the details of the crime, including the means used in committing the offense.

However, in this case we have only the attorney general's word for it that a preliminary was held and there is no showing whatever that at such hearing a trial was had or that the testimony was stenographically reported. It may have been waived by defendant. We do not know. Whether there was a preliminary trial or not, the trial court, we assume, was advised and considered, as he had a right to do, "the whole record and the entire course of the proceedings against the defendant." (Sec. 44–712.)

At all events, we think the request for a bill of particulars was complied with by the county attorney practically as soon as it was made. It is true it was not formally written out and filed in the case but it was taken down by the court reporter, in the formal statement by the county attorney to the jury as to what the state would prove, and reads as follows:

"In this case the State of Arizona will offer evidence to show that on the evening of October 14, 1940, Donald J. Haynes and his wife Thelma Haynes were walking on Country Club Road southerly towards Speedway between Drachman Street and Speedway; that at the time Haynes was carrying in his hand a small hand light, burning; . . . that Haynes and his wife were walking over to the side of the highway, and that while they were so walking there the defendant, Benham, approached them in his 1932 Plymouth sedan automobile and ran into them, then and there killing Thelma Haynes; that the defendant at the time of the operation of the vehicle had been drinking, that his car had practically no brakes on it, and that the headlights on his car were in such condition that an object in front of the car could not be seen by the headlights, and that he ran into them, killing Mrs. Haynes, as I told you; Mr. and Mrs. Haynes being taken away from the scene of the accident."

If the request for a bill of particulars had been made within a reasonable time before the day the case was set down for trial, and it had appeared to the court that the defendant did not already have the information as to the particulars of the charges sufficient "to enable him to prepare his defense" (sec. 44–712), we think the court should and would have ordered the county attorney to furnish a bill of particulars containing such information.

The provisions of the law with reference to furnishing a defendant the facts of the charge against him cannot be ignored or treated lightly. It has always been the law among right-thinking peoples, and we hope will continue to be the law in this land of ours, to require the state fully to inform the accused what he is charged with and to allow him time to prepare his defense, if he has one. The simplified rules of procedure do not take from a defendant one whit of a meritorious defense, but those rules do not tolerate defenses that only delay or obstruct the termination of criminal cases. An indictment or information that charges a homicide by name, as for instance, manslaughter, is good under the code, but one thus charged is entitled to know what the state expects to prove against him before he is put on his trial. It is no hardship on the state, and it is certainly due to the defendant, that he be told that the state will, for example, offer evidence of three criminal acts, to wit, that the defendant was driving his automobile while under the influence of intoxicating liquors, that his headlights were poor, and that his brakes were inefficient and because thereof he ran into and killed the deceased.

The bill of particulars has long been employed to inform a defendant of the facts of the charge more fully than the indictment or information. It is common-law pleading and most of the states of the

Union have recognized it as a useful aid in the trial of those charged with crime. Its granting or refusal, however, under the common law was discretionary, not mandatory. 27 Am. Jur. 671, sec. 111 et seq.; *State* v. *Robinson,* 109 Mont. 322, 96 Pac. (2d) 265. The code procedure we are considering, in that feature, is, we think, much like the common law. The discretion of the trial court, however, should be exercised liberally to the end that no constitutional or statutory right be denied an accused. The defendant by his conduct, it seems to us, waived any right that he might have to a formal written bill of particulars, because he requested it too late.

"The right to a bill of particulars, where it is not given by mandatory statute, is a privilege afforded the accused for his benefit, but it is necessary for him to demand or request in some appropriate manner that he be furnished with such a bill if he deems the indictment or information inadequate or insufficient to enable him properly to prepare for his defense on the merits, in order to avoid risking a waiver of the defect. As a general rule, a bill of particulars should be applied for in advance of trial; otherwise, it will be assumed against the defendant that he is fully informed of the precise case which he must meet on the trial. . . . " 27 Am. Jur. 674, sec. 114.

 Specification two is directed at the court's denial of defendant's challenge to juror Doctor Smiley on the statutory ground that he "has a state of mind in reference to the cause or to the defendant . . . which will prevent him from acting with impartiality." Sec. 44–1313, subd. (j). The sum and substance of this juror's answers to questions put to him by the court and counsel is that he had formed an opinion about the case from what he had read in the newspapers but that such opinion was not fixed and had not been discussed except with his wife and some neighbors; that he had a prejudice against reck-

less driving; that he "felt strongly" about "the use of bad judgment, excessive speed or carelessness in driving." When asked if he would convict defendant "for the use of bad judgment," he answered "No, . . . I would not do it." He said he did not know defendant nor the deceased in her lifetime and that he knew none of the attorneys. The only thing brought out to show him an improper juror, as we see it, was his admission to a prejudice against "excessive speed and carelessness in driving," and we do not think that a disqualification. That feeling, we think, is common to all good citizens as it is against theft, burglary, homicide and many other crimes against society. Because one deplores or hates these things is no evidence he is prejudiced against a person charged with their commision. He may hate a crime but have an open and unprejudiced mind as to the accused's guilt thereof. Doctor Smiley stated that he believed he could be a fair and impartial juror; that he could disabuse his mind of any fact read in the newspapers and try the case on the evidence presented and the instructions.

Opinions based on newspaper reports do not disqualify a juror who states on oath "that he believes he can fairly and impartially render a verdict therein, in accordance with the law and the evidence," and the court is satisfied of the truth of such statement. Sec. 44–1314. The same statutory rule concerning the formation of an opinion or impression regarding the guilt or innocence of the defendant is found in subdivision (j), section 44–1313. No question was asked the juror eliciting his opinion as to whether he believed the defendant was innocent or guilty. The whole inquiry seemed to be concerning his prejudice against reckless and careless driving, and his answers

seemed to be directed to that inquiry. We think the juror was not disqualified.

The defendant, at the close of the state's case and at the close of the whole case, made a motion for an instructed verdict on the ground that the *corpus delicti* had not been proved *aliunde* the confessions and admissions of the defendant. The court denied such motion and such denial is specified as error. We think the motion was clearly erroneous in its assumptions. The evidence was conclusive that Thelma Haines was killed on the public highway, at the time and place named in the county attorney's opening statement to the jury, and that she was killed by being struck by an automobile. Her husband testified that he and Thelma were walking, the night of October 14, 1940, south on Country Club Road; that he saw three automobiles approaching from the north; that two of them passed by, and after that he remembered nothing; that the third one had very dim headlights, reddish in color. Other witnesses testified to finding Haines and wife lying in the road, the former seriously injured and Thelma dead; of Thelma's being buried; of defendant being there in or near his 1932 Plymouth sedan.

There are many other circumstances to show defendant's connection with the accident and the death of Thelma Haines. But the state did not have to rely on them alone for the reason that the defendant admitted to several persons that he was the owner of and was driving the automobile when it ran into deceased and killed her. Aside from such admissions, however, the evidence of defendant's guilt was ample to take the case to the jury. As the trial judge very properly stated, it was a question of the order of evidence. To prove merely that John Doe has been killed is no evidence as to who killed John Doe. More

than the body or *corpus* of the crime must be proved by evidence other than admissions or confessions of the defendant. In the case of homicide, it must be shown that the deceased came to his death by violent means or in a manner made by the law criminal, and that defendant was connected with or participated in the act that caused the death. The defendant's contention that the *corpus delicti* cannot be proved by the admissions or confessions of the defendant alone is absolutely right, but when the body or *corpus* of the crime is proved beyond any question, as here, the defendant's admissions or confessions, along with other evidence and circumstances, are always admissible to show defendant's connection therewith. *Edwards* v. *Territory,* 8 Ariz. 342, 76 Pac. 458; *McCann* v. *State,* 20 Ariz. 489, 182 Pac. 96; *La Grange* v. *State,* 26 Ariz. 102, 222 Pac. 414; *Douglas* v. *State,* 26 Ariz. 327, 225 Pac. 335; *Collins* v. *State,* 37 Ariz. 353, 294 Pac. 625; *Houston* v. *State,* 39 Ariz. 117, 4 Pac. (2d) 388.

 Counsel for defendant present a very novel argument against allowing evidence of defendant's being present at the scene of the accident and his admissions then made. They ask whether it would have been better for him to have left the scene and thereby subject himself to punishment for a minor felony, rather than report the accident as required by sections 66–122 and 66–203, and thereby lay himself liable to punishment for a major felony, to wit, manslaughter. What defendant did, counsel say, if admissible in evidence, amounts to self-incrimination and violates section 10, article 11 of the state Constitution.

One answer to the question, it seems to us, is that what defendant did after the accident was of his own volition. He, perhaps, was actuated by humane motives, or he might have felt, which is probably true, that to run away from the scene would only add an-

other offense to the one he had just committed, for it is very improbable that he would have escaped discovery. We think his plea comes with poor grace. Every person who commits a crime is quite apt to be apprehended and if he, by his own acts or conduct or speech, assists the government in ferreting out his crime, it would be strange indeed if the government were not permitted to show that fact.

It is shown that an ambulance arrived at the scene of the accident very soon after it happened and a witness testified he saw defendant in the light cast by such ambulance, or at least by car lights, and recognized him; also that he heard him talk. After such statement by the witness, counsel for defendant objected on the ground that it was "too remote." The court, in ruling on the objection, said: "It would not be remote, anything he might say then, at this time." This statement of the court is excepted to by counsel as a comment upon the evidence. We have just had occasion to state that the court, in passing upon objections to testimony, has a right to give his reasons therefor and that the same will not be treated as a comment on the evidence. *State* v. *Tuttle, ante,* p. 116, 118 Pac. (2d) 88. Clearly in this case there was no comment on the evidence.

Ora Shinn, a deputy sheriff, took charge of defendant's automobile at the scene of the accident and testified as to the condition of its brakes and headlights. He and Bob Telles took the car to the sheriff's lot or office. He testified that the battery was dead and that the car had to be pushed to start it; that the brakes would not stop the car and that when they arrived at the sheriff's lot or office his companion got out and held onto the fender to stop it; that he pushed the brake down with his foot and it would not stop the car. As to the headlights, he testified they were

poor; that they would not throw such a light that one could see a person on the level, under normal visibility conditions, 200 feet away and not even 10 feet away. The defendant objected to such testimony on the ground that the automobile was not shown to be in the same condition as it was when the accident occurred or just before. The objection might have some merit except for the fact that the automobile's condition was observed immediately after the accident and while the witness was taking it to the sheriff's lot or office. No one except defendant had handled it subsequent to the accident until Shinn took it over. At all events, this witness testified that the car was in the same condition when he left it at the sheriff's lot as it was when he found it at the place of the accident. Although the defendant makes considerable out of the admission of this testimony, we do not think the court erred in admitting it.

Defendant also specifies as error the introduction, over his objection, of the bloody maternity dress worn by the deceased. This evidence was permitted by the court as rebuttal. The husband of the deceased testified that he was wearing light green gaberdine pants and a "pale" shirt; that the wife was wearing the dress introduced, without stating the color. We have examined the dress and find it to be blue-and-white print, the blue predominating and being rather a light shade. A witness by the name of Freeman had testified in behalf of the defendant that he saw two persons walking near the scene of the accident and that they were dressed in dark clothes. The testimony as to the color of the dress the deceased was wearing and the color of the clothing that her husband was wearing contradicts, in a sense, the testimony of Freeman. On the whole, we cannot see that this testimony had any particular business in the case. The evidence is

abundant and uncontradicted that the defendant was the person who ran into and killed Thelma Haines, and we do not think that the introduction of this dress, even granting that it should not have been introduced, in any way affected the verdict of the jury.

Another specification is that it was error for the court to permit the state to introduce in evidence by way of impeachment statements made by defendant to the county attorney after the accident as to the condition of his headlights and brakes, since such statements were not inconsistent with his testimony or in conflict therewith. If defendant's contention that there was no conflict be true, then we cannot see how he was hurt. A careful study of his answers, we think, justified the court's action.

The state's evidence tends very strongly to show that on the night of October 14, 1940, at about 9:30 P. M., while Donald J. Haines and his wife Thelma were walking along Country Club Road, in Tucson, in a southerly direction the defendant ran into them killing Thelma and seriously injuring Donald; that he had been drinking; that his brakes would not stop the car and that his headlights did not conform with the law, and upon such testimony the jury returned a verdict of guilty.

We judge from the record that defendant is not a bad man, but that cannot excuse him. This unfortunate affair has doubtless resulted in teaching him a rather expensive lesson. His counsel have made heroic efforts to extricate him from the pit that he himself dug. There is no one to blame but himself.

We think the defendant had a fair and impartial trial and therefore affirm the judgment.

LOCKWOOD, C. J., and McALISTER, J., concur.