[Crim. No. 332.     Third Appellate District.—February 5, 1916.]

## THE PEOPLE, Respondent, v. WILLIAM B. OLIVER, Appellant.

CRIMINAL LAW—CONTRIBUTION TO DEPENDENCY OF MINOR—SUFFICIENCY OF INFORMATION.—An information charging a defendant with the crime of contributing to the dependency of a minor sufficiently states a public offense under the juvenile court law, where, after alleging that the minor was a female child of the age of fifteen years, without parent or guardian capable of exercising proper parental control over her, and that she "was and is wayward and addicted to vicious habits, and was and is in danger of being brought

up to lead an idle, dissolute, and immoral life," it charges him with encouraging, causing, and contributing to such dependency by enticing and persuading such minor surreptitiously and without the consent of her father to leave and remain away from her home, and to meet, be, and remain with the defendant under cover of darkness until a late and unusual hour of the night.

ID.—EVIDENCE—OTHER ACTS OF IMPROPER CONDUCT.—It is permissible to show that the defendant on other occasions than the specified date laid in the information had been guilty of improper conduct with the minor, as under the juvenile court law any conduct upon the part of a person toward a minor which either causes or tends to cause such minor to become or remain a dependent or delinquent person may be shown, and such conduct may consist of one act only or a series of acts.

ID.—LACK OF PARENTAL CONTROL—SUFFICIENCY OF EVIDENCE.—The allegation in the information that the minor had no parent or guardian capable of exercising proper control over her is sufficiently established, by evidence showing that the child's father, who was her only guardian at the time in question, was either incapable of exercising or unwilling to exercise proper parental care over her.

ID.—CONVICTION OF DEFENDANT—SUFFICIENCY OF EVIDENCE.—A verdict of conviction is sufficiently supported by evidence showing a wayward minor female, with a strong inclination toward a wild and indifferent life, obtuse to perceptions of morality, without a parent or guardian capable of properly controlling her or her conduct, holding clandestine meetings at late hours of the night with a married man, almost old enough to be her father, and permitting him to take liberties with her person which would lead to immoral practices of the grossest character.

APPEAL from a judgment of the Superior Court of Shasta County, and from an order denying a new trial. J. E. Barber, Judge.

The facts are stated in the opinion of the court.

M. G. Gill, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant was convicted in the superior court of Shasta County of the crime of contributing to the dependency of an alleged dependent child, and appeals to this court from the judgment and the order denying him a new trial.

The information upon which he was tried and convicted reads as follows: "That on or about the fourteenth day of June, 1915, at the town of Cottonwood, in the said county of Shasta, state of California, one Josephine Fa Mar, then and there a female minor child, under the age of eighteen years, to wit; of the age of fifteen years, was then and there a female dependent minor child, in this, that the said Josephine Fa Mar had no parent or guardian capable of exercising proper parental control over the said Josephine Fa Mar, and for want of such parental control, said Josephine Fa Mar was and is wayward and addicted to vicious habits, and was and is in danger of being brought up to lead an idle, dissolute and immoral life, and that the said defendant then and there willfully, unlawfully, and feloniously, on or about the said fourteenth day of June, 1915, at Cottonwood, in the said county of Shasta, state of California, did encourage, cause, and contribute to the dependency of said Josephine Fa Mar, by the said defendant, then and there enticing and persuading said Josephine Fa Mar, surreptitiously and without the consent of W. W. Fa Mar, the father of the said Josephine Fa Mar, to leave and remain away from the home of said Josephine Fa Mar, in the said town of Cottonwood, and to meet, be, and remain with said defendant under cover of darkness until a late and unusual hour of the night."

The defendant contends that the information does not state a public offense, and that the evidence is insufficient to support the verdict.

The information states an offense under the so-called juvenile court law, and the demurrer thereto was, therefore, properly overruled.

By section 3 of said law, as amended by the legislature of 1913 (Stats. 1913, p. 1285 et seq.), it is, among other things, provided that "within the meaning of this act the words 'dependent person' shall include any person: (1) Who has no parent or guardian willing to exercise, or capable of exercising proper parental control, and for the want of such proper parental control, such person is wayward and addicted to vicious habits, and is in danger of being brought up to lead an idle and dissolute, or immoral life. . . . "

Section 28 of said act reads, in part, as follows: "Any person who shall commit any act or omit the performance of

any duty, which act or omission causes or tends to cause, encourage or contribute to the dependency or delinquency of any person under the age of twenty-one years, as defined by any law of this state, or any person who shall, by any act or omission, threats or commands or *persuasion,* endeavor to induce any such person, under twenty-one years of age, to do or to perform *any act or follow any course of conduct,* or to so live as would *cause or manifestly tend to cause* any such person to become, or to remain, a dependent or delinquent person, shall be guilty of a misdemeanor,'' etc.

The information, it will be observed, after alleging that the alleged dependent minor is a female child of the age of fifteen years, that she is without a parent or guardian capable of exercising proper parental control over her, and that for want of such proper control, she ''was and is wayward and addicted to vicious habits, and was and is in danger of being brought up to lead an idle, dissolute, and immoral life,'' with clearness and directness charges the defendant with the commission of certain specific acts toward said minor which, if true, could certainly have no other effect than to tend to contribute to said minor's dependency within the description of that offense as it is defined by the statute. Indeed, if the acts of the defendant, as charged in the information, toward and with a female child of the immature age of fifteen years did not constitute an endeavor on the part of said defendant to induce the said child to follow a course of conduct which would ''cause or manifestly tend to cause'' her to become a dependent person or to remain one if already such a person, then it is difficult to conceive of conduct upon the part of a male person toward such a minor, short of that of outraging her person, which would have such effect. And the specific acts of which the defendant is accused are set forth in the information with sufficient clearness definitely to apprise him of the precise nature of the charge which he was thereby called upon to meet, and when this is done an information or indictment meets all the requisites of such a pleading, assuming, of course, that an offense known to the law is so stated.

It is next contended that, in permitting the people to show that the defendant on other occasions than the specific date laid in the information had been guilty of improper conduct with the minor, the court committed error damaging to the

rights of the accused, since, so it is claimed, the district attorney, at the beginning of the trial, elected to rely upon the specific acts alleged to have been committed "on or about the fourteenth day of June, 1915."

It is argued in support of that contention that the rule is that evidence of the commission of "other similar offenses" to the one charged is never admissible to prove the specific charge set out in the information or indictment. The general rule is as stated by counsel for the defendant, but it has its exceptions. There are certain classes of crime, to corroborate the proof of the commission of which, or to show a disposition in the accused to commit offenses of the nature of the one charged, other acts or offenses similar to the one specifically charged may be shown. Among these classes are the crimes of rape, seduction, and the like, and even some offenses of an entirely different nature. Such other acts or offenses, however, "are never admissible as independent substantive offenses, upon any of which a conviction can be had, but evidence of them is only admissible after the prosecution has selected some particular act of a date certain, and has introduced evidence tending to support the selection." (*People* v. *Koller,* 142 Cal. 621, 624, et seq., [76 Pac. 500, 501], and authorities therein cited.)

But, as we conceive the situation presented here, evidence of the several acts of the defendant which were shown for the purpose of establishing against him the crime charged in the information is admissible not alone upon the theory of the rule above stated. Under the so-called juvenile court law, any conduct upon the part of a person toward a minor which either causes or tends to cause such minor to become or remain a dependent or delinquent person may be shown, and such conduct may consist of one act only or a series of acts. While one of such acts may be sufficient to constitute the specific crime of contributing to the dependency of the minor, a number of different acts leading to the same result can have the effect of doing no more. For illustration: a male person might, on a single occasion, persuade and induce a female minor to resort to the grossest acts of immorality. This would be sufficient to establish the crime of contributing to the dependency of such minor within the clear intent of the statute. On the other hand, the male person might succeed, only after repeated acts of persuasion, in leading the female

minor into the course of conduct which would put the stamp
of dependency upon her under the statute, in which case the
male person would be guilty, not of as many different and
distinct crimes as there are acts leading to the same general
result, but, as in the case of the one act as above illustrated, of
the single crime of contributing to the minor's dependency.
Therefore, while it is true that the information alleges that
the crime of which the defendant is thereby accused was com-
mitted "on or about the fourteenth day of June, 1915," it
was competent to prove that, in addition to the particular act
mentioned in the information, other acts of a similar charac-
ter and tendency had been committed by the accused upon
said, minor.

It is next insisted that one of the elements of the offense as
it is described by the statute and charged in the information
is that the minor named therein was without a parent or
guardian willing to exercise or capable of exercising proper
parental control over her, and that, since said minor was
shown to have a father, at whose home she resided, that
requisite of the offense charged was not proved. But the
record contains sufficient evidence to show that the child's
father, who was her only guardian at the times concerned
here, was either incapable of exercising or unwilling to exer-
cise proper parental care over her.

Fa Mar, father of Josephine, is a musician by profession,
and, at the times of the occurrences resulting in the prefer-
ring of the charge alleged in the information against Oliver,
was engaged in teaching music in the Lincoln public school,
at Red Bluff. He resided, however, in the village of Cotton-
wood, Shasta County, a short distance from Red Bluff, and
upon the days appointed for the teaching his classes in music
he would go by train from his home to Red Bluff. His wife
was, and had been for some months, an inmate of the Napa
State Hospital for the Insane, and his family, all living with
him in Cottonwood, then consisted of six children, the eldest
of whom was Josephine, the alleged dependent, aged about 16
years. The other children, of whom one was a boy, ranged
in age from 4 to 13 years. Josephine, after her mother was
committed to the state hospital, took charge of the home and
was supposed to look after the younger children. Fa Mar
testified that Josephine had a very bad disposition. Often
she would become angry at her father and would not speak

to him for a period of ten days or two weeks, and on occasions would while in a passion break the dishes used at the eating-table. In brief, without going further into the details of the evidence directly presented by the people upon this point, it is enough to say that the general trend and tenor and effect of Fa Mar's testimony was that either he was incapable of properly controlling Josephine or was unwilling to attempt to do so. But not upon the testimony of the prosecution alone is it necessary to found the conclusion that Fa Mar was either wholly incapable of exercising proper control over the young woman or wholly unwilling to do so; for the defendant himself, both upon cross-examination of the people's witnesses and by his own direct testimony, brought out facts strongly indicating that Fa Mar either could not control Josephine or had no desire or disposition to do so in a proper way. On cross-examination, Josephine was made repeatedly to say that her father often mistreated her by cursing her and calling her opprobrious names. On one occasion he said to her that she could leave home if she desired to and remain away forever; that he had gotten along well without her before she came into the world and could get along equally as well without her in the future. Furthermore, on the presentation of his defense, the defendant, through several witnesses introduced by him, brought out testimony which, if true, showed that Fa Mar abused all his children outrageously, frequently calling them "little dirty s— of b—hs." So, assuming that the people failed to make full proof upon the point under consideration, it is manifest that the defendant supplied it, and on the whole evidence the jury were apparently justified in finding that Fa Mar was either incapable of bestowing upon Josephine proper parental care or was unwilling to do so, or both incapable and unwilling; for a parent who would deport himself in the manner so described toward his minor children is obviously unfit, and, indeed, justly may we add, if he be a person of ordinary intelligence, unwilling to exercise that care and control over his minor offspring which their tender years and consequent immature judgment imperatively require.

The last contention is that the evidence is insufficient to support the verdict. The defendant was, at the trial, so confident of his ground upon this point that he moved the court to advise the jury to find a verdict of acquittal, which motion

was denied. But as the record is presented to us, there is as little merit to the point as we found in the other points above considered and disposed of.

A detailed statement of the facts is not necessary. In addition to those above stated, it will suffice, for the purposes of the present consideration, to say that from the testimony the jury could have found, and doubtless did find, these facts to have existed: That the defendant, aged about 33 years, is a man of family, consisting of a wife and five children; that he resided with his family in the town of Cottonwood, and a few blocks from the residence of Fa Mar; that he became acquainted with the Fa Mar family, and on one or two occasions worked for Fa Mar, assisting the latter to prepare some of the equipments of a moving picture show, which business Fa Mar was about to launch; that defendant became attracted to Josephine and held secret meetings with her; that, while Fa Mar was absent from home—at Red Bluff, from which place, on Monday of each week, he usually returned home not before 9 or half-past 9 o'clock at night—the defendant would call on Josephine, and, on several occasions, was with her in her bedroom; that at her home, on one occasion, he talked to her about sexual intercourse, kissed her, and put his hand under her clothes; that he addressed letters to her, of which some he mailed, one he sent to her by a young man, and others he dropped on the porch of her home as he was passing by; that Josephine, on one occasion, pretending to retire, left her room and the house after her father and the younger children had gone to bed, and met the defendant, at between 9 and 10 o'clock, at the public school building in Cottonwood, where they sat together on the ground, he throwing his arms about her body, kissing her and placing his hands under her clothes; that, on said occasion, he talked to her about sexual intercourse, and that Josephine returned to her home at about between the hours of 2 and 3 o'clock in the morning; that, on other occasions, Josephine, without the knowledge or consent of her father, left home and remained away all night.

Thus it is plainly apparent that a case, within the intent of the statute, was made against the accused. A wayward minor female, with a strong inclination toward a wild and indifferent life, obtuse to perceptions of morality, without a parent or guardian capable of properly controlling her or her conduct, holding clandestine meetings at late hours of the

night with a married man, almost old enough to be her father, and permitting him to take liberties with her person which, in nine cases out of ten, will lead to immoral practices of the grossest character, what more should be required to establish a case of contributing to the dependency of a minor, within the contemplation of the juvenile court law?

There is, it is true and as might reasonably be expected, a conflict in the evidence upon the vital points involved in the charge. The defendant himself not only positively denied committing the acts of which he was accused by Josephine and the corroborating witnesses, but declared in effect that his attentions to Josephine were inspired solely by a desire to protect her against the abusive treatment to which she was subjected by her father, and to this end permitted her on one occasion to remain overnight at his home, and called upon Fa Mar to talk to him about and in behalf of his daughter. And he introduced witnesses whose testimony corroborated to some extent his asseverations of innocence. But all this testimony, when placed side by side with that produced by the people, merely had the effect of creating a conflict, which it was solely the function of the jury to solve. They having decided that conflict against the claims of the accused, and there being an apparent justification for the result reached by them in the evidence brought to their attention by the people, it is not for this court to say that their judgment, thus evidenced, is erroneous or not sufficiently fortified by the proofs.

The judgment and the order appealed from are affirmed.

Chipman, P. J., and Burnett, J., concurred.