[Crim. No. 3761.   First Dist., Div. One.   Aug. 11, 1960.]

THE  PEOPLE,  Respondent,  v.  ULYSSIES  G.  MOORE,
Appellant.

Garry, Dreyfus, McTernan & Keller for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Peter T. Kennedy, Deputy Attorneys General, for Respondent.

TOBRINER, J.—Having examined the record of the trial of appellant upon two charges of contribution to the delinquency of a minor in that, first, appellant gave a minor intoxicating liquor and second, paid her for the commission of a lewd act, we are convinced that the evidence substantiates the verdict. The fact that the jury acquitted appellant of two other charges involving statutory rape does not necessarily conflict with his conviction under the pertinent statutory provision, which must be applied with regard to its purpose of the prevention of the delinquency of minors, rather than in the light of the presently alleged innocent motivation of appellant.

The district attorney, by information, charged appellant with a violation of section 702, Welfare and Institutions Code, in that on or about the 6th day of February, 1959, he gave "a minor under the age of seventeen years intoxicating liquor and further did give her money to commit a lewd act with said defendant, all of which said willful and unlawful acts and course of conduct on the part of defendant, as aforesaid did cause" the minor to become such a person as is defined under the section. Separate informations likewise charged appellant with violation of Penal Code, section 261, subdivision 1, in the commission of rape upon the prosecutrix on the 2d and 6th day of February, 1959, respectively.

Upon pleas of not guilty to all three charges and upon trial, the jury found appellant not guilty on the statutory rape counts, but guilty on the misdemeanor count. The court denied appellant's motion for a new trial but granted appellant probation for three years, conditioned upon his confinement for six months in the county jail.

Appellant, in the first instance, argues here that his conviction of contribution to the prosecutrix' delinquency is incompatible with the jury's verdict of innocence as to the alleged rape, allegedly the only "lewd act" attributed to appellant; in the second instance, he contends that the evidence fails to prove the commission of the remaining misconduct, the furnishing of prosecutrix with liquor. To analyze these contentions we must set out in some detail the history of the behavior of appellant and prosecutrix; to test the particular acts upon which conviction may rest, we must project them against a bizarre background.

Shortly after 6 a. m. on February 2, 1959, 16 or 17-year-old Evelyn Von Schulze, the prosecutrix in this case, emerged from a hotel in the tenderloin district of San Francisco. Dressed in black capris (a type of tight-fitting woman's slacks, a black sweater, slippers with heels, and sun glasses, her hair straggly, and her appearance generally "unsanitary," she had run away from her foster-home and had not slept all night.

It was in this state that she encountered appellant soon after leaving the hotel. He was then about 42 years old, a married man who was part-owner, driver and dispatcher of the Friendly Cab Company. The prosecutrix inquired of appellant, who was on duty as a driver, as to how she could get to a certain intersection in San Francisco. According to the prosecutrix, however, appellant offered her a ride in his cab. She testified, although appellant recorded a different story, that appellant drove to a location where another driver was supposed to relieve him, but, without obtaining such relief, went, instead to "his place" at 915 Fulton Street, San Francisco. There they left the cab for a private car; appellant, then, drove to a bar in San Francisco called the "Plantation."

On the way to the bar, appellant testified that the prosecutrix told him, among other things, that her name was "Mary," that she was in trouble; that, since she had had "five tricks" that night, she was trying to get out of the district because the police would be looking for her. Appellant further stated that he told her that she needed an attorney; that he knew one, whom he would contact as soon as they arrived at the "Plantation." He did not know her exact age but realized that she was under 21.

According to Miss Von Schulze, upon reaching the "Plantation," appellant asked her if she wanted a drink, and she replied in the affirmative. Appellant then bought her a glass of tequila; Miss Von Schulze imbibed about four drinks. On the other hand, appellant denies having given her an alcoholic drink at that or any other time.

Appellant thereupon obtained his own car, and after some driving about, the exact nature of which is in dispute, the parties eventually, sometime before 10 a. m., arrived at Brisbane. In the course of the ride, appellant, according to Miss Von Schulze, offered to help her get a job and suggested that, for the time being, a motel in Brisbane would be a good "hide-out." Admitting the offer of assistance in obtaining

work for the girl, appellant denied the advice as to the "hide-out." Arriving at the Mozzetti Motel in Brisbane, appellant obtained a room, paying the proprietor $5.00 as rent, but failing to register. Appellant claims that he did not register because he did not intend to use the room for himself.

The two of them then went into the room. Allegedly feeling some ill effects from the liquor taken at the "Plantation," the prosecutrix undressed and got into bed. According to Miss Von Schulze, appellant had intercourse with her in this room at this time; appellant denied having had intercourse with her then or at any other time. Later that day, according to Miss Von Schulze, appellant left the motel, taking her outer garments, leaving her with nothing but her underwear. Appellant claims he did so merely for the purpose of having the clothing washed.

When appellant returned in the middle of that afternoon, he brought with him food and clothing. He came back again that evening, allegedly for the purpose of later taking the girl, at 9 p. m., to see the attorney in order to get the promised position. Appellant claims that she refused to keep the appointment; he let her out of his car at Silver and Mission Streets and later in the morning of the 3d returned to the motel, and slept there, from about 4 to 7:30 a. m. The girl asserts, however, that he picked her up and took her to Brisbane and that she was then with him at the motel on that morning; indeed, she testified that a maid brought in towels around 10 a. m. The occurrence of this event appellant admits, although he denies the presence of the prosecutrix. She, however, claims that she went into the bathroom, being concealed from view when the maid brought the towels; be that as it may, the maid, according to her testimony at the trial, did not then see her.

On February 6th Miss Von Schulze again saw appellant. Accompanied by Larry Cadena, a young male associate of the prosecutrix, they drove to a drive-in restaurant in appellant's car. On the way, according to the prosecutrix, appellant made her a "proposition," namely, that he knew a man of 70 who would pay $15 to her if she would stand in the nude before him. Appellant denies ever having made such a proposal.

After leaving the restaurant the three of them went to appellant's house at 915 Fulton Street. There the prosecutrix testified that she had some "Champagne-Ale" as well as "Thunderbird Wine" which Cadena obtained. Upon being questioned, however, as to the origin of the wine, she stated,

"How was I supposed to know who got it?" At the preliminary hearing she said, "We all drank one glass together."

Thereafter appellant gave Cadena $5.00 for the purchase of liquor. While Cadena was out, according to the prosecutrix, appellant told her that there was no 70-year-old man, but that appellant himself wanted to see her in the nude. Appellant denied this. According to the prosecutrix, she and appellant went to a room on the third floor where appellant gave her $7.00, and they later engaged in intercourse. This, too, appellant denied.

Three questions confront us: First, does substantial evidence indicate that respondent gave the prosecutrix intoxicating liquor; second, does such evidence indicate that appellant gave the prosecutrix money to commit a lewd act; and third, can the instant conviction of contributing to the delinquency of a minor rest upon a continuing course of conduct of appellant, embracing additional acts of misconduct other than those specifically charged. Since, as we shall point out, we have concluded that a conviction may properly rest upon either of the first two propositions, we need not decide the third.

■ Turning to the first issue as to the alleged acts of appellant in supplying prosecutrix with intoxicating liquor, the evidence discloses two different instances of such conduct. The first of these occurred on February 2d at the "Plantation"; the second on February 6th at 915 Fulton Street. The evidence indicates that appellant bought prosecutrix a glass of tequila at the "Plantation"; indeed she alleges that she took about four drinks and later suffered ill effects from them. Since the information charges that appellant supplied the liquor on February 6th, rather than February 2nd, we relate the preceding events of February 2nd, not as direct substantiation of the verdict but as evidence which collaterally supports the conviction for the events of the 6th.

The telling events of the 6th may be segregated, for our purposes, into two parts. First, appellant gave the prosecutrix "Champagne-Ale"; second, he procured other liquor for her consumption. As to the former, when Miss Von Schulze was asked, "Did you have anything to drink there?" she answered "Yes," stating that "It was a bottle of ale." She further testified that the label on the bottle was "Champagne-Ale." Apparently this bottle was in appellant's prior possession although the testimony on this score is confused. The evidence likewise indicates that on this occasion prosecutrix drank some

"Thunderbird Wine," although the origin of the wine remains in doubt. Later, when Larry returned with other refreshments, she testified that she was ". . . still drinking the one I had first gotten."

In the context of the word "drinking" in all of this testimony, the jury could have properly concluded that it referred to imbibing intoxicating liquor. The use of the term, in the circumstances of this case, does not allude to "drinking" a glass of water or some other nonalcoholic liquid. Moreover, the word "ale" itself leads to an inference of an alcoholic drink. The fact that Miss Von Schulze testified that she felt no untoward aftereffects from the liquid does not necessarily prove it to be a nonintoxicant. Thus the jury's inference that the "Champagne-Ale" imbibed by Miss Von Schulze was an intoxicant rests upon substantial evidence; it does not lie with this court to upset that inference. (*People* v. *Newland* (1940), 15 Cal.2d 678 [104 P.2d 778].)

The second independent and supporting evidence as to the events of February 6th indicates that appellant gave Cadena $5.00 for the purchase of liquor. Cadena came back with "a bag" in which there were "one or two bottles." Appellant procured "some glasses from Mrs. Granville," a neighbor. At the preliminary hearing prosecutrix testified that on this occasion, "We all drank one glass together." Although appellant contends that he gave Cadena the money to buy liquor only for Cadena himself, appellant's admission as to ordering the liquor and obtaining the glasses undermines this theory; nor can appellant reasonably contend that Cadena did not bring back the liquor, since he states, "Sir, Your Honor. I really don't know what was in the bottle. I saw the beer cans; Larry was taking the bottle home with him in the bag when they left, but I knew that they had beer because I saw beer cans in the lobby the next morning when I had it cleaned up." From these facts, as to the second occasion, the jury could likewise properly infer that appellant supplied prosecutrix with liquor.

No rule required the jury to regard the foregoing episodes in isolation. This is not a case in which a defendant offers a single drink to a minor under normal circumstances, and a question arises as to the nature of the content of the liquid. Here appellant admittedly took the prosecutrix to a bar, to a motel and finally to a room at his own house, under highly questionable circumstances. Viewing the sequence of events as a whole and fitting together the various pieces, the jury

could look upon them in combination and draw the inference that the drinks were intoxicants.

■ We turn now to the second issue as to the payment of money for the commission of a lewd act. The alleged events occurred when appellant took the girl to his room on the third floor of the house. Miss Von Schulze testified that when she had her "second drink," appellant "opened his wallet and gave . . . [her] seven dollars," saying he "didn't have the rest of the money." The reference to the money apparently relates to the original "proposition" for the payment of the $15 by the "old man" who desired the posing in the nude, and her earlier testimony that there was no such person but appellant himself.

While the prosecutrix testified that an act of sexual intercourse followed the payment, and the jury found to the contrary, we cannot rule that the jury might not legitimately have concluded from this evidence that appellant did give the girl $7.00 for the commission of a lewd act. The payment was not necessarily contingent upon the consummation of sexual intercourse. If the jury were to accept only that part of the testimony which avers that appellant "undressed and got in bed" with the denuded girl, that performance in and of itself is quite sufficient to constitute the charged lewd act. Indeed the mere payment of money for the commission of a contemplated lewd act, if nothing whatsoever followed, fulfills the requirements of the charge. The jury could rest its finding solely upon appellant's giving the money to the girl in this context. Projecting the testimony of the payment against the background of this whole strange picture, excluding, of course, the testimony of the alleged intercourse, we cannot hold that no substantial evidence supported the verdict in this regard.

The prosecution urges that it is not limited to the events of February 2d and February 6th but may prove other acts upon which the conviction may rest. Contending that in a case of this nature the specificity of charges normally required in an information may be replaced by a general allegation that defendant contributed to the delinquency of a minor, respondent argues that that allegation in itself suffices to encompass any acts tending to such a result, whether or not particularized. Each of the cases cited in this regard, however, refer to an information which independently pleads as a ground for the offense a course of conduct on the part of defendant leading to delinquency. (See *People* v. *O'Moore* (1948), 83 Cal.App.

2d 586 [189 P.2d 554]; *People* v. *Lowell* (1946), 77 Cal.App. 2d 341 [175 P.2d 846].) The information in the instant case could well be construed as confining the "course of conduct on the part of defendant," set out "as aforesaid" in the information, to the "willful and unlawful acts" specified in it. Since this question does arise as to the information, and since the evidence in any event substantiates the jury's verdict upon the specifically charged "unlawful acts," we base our decision upon the latter. The testimony sufficiently upholds the charges that appellant gave the prosecutrix intoxicating liquor and, further, gave her money to commit a lewd act; either of these acts suffice.

In conclusion, we deal here in an area of law which properly is peculiarly sensitive to antisocial conduct. ■ Stringent prohibition of contribution to the delinquency of minors must be a basic purpose and responsibility of a mature society. Whatever the facts of this particular case, and however irresponsible the conduct of this minor, the rules we make and apply here extend to other young people and other situations. While appellant's counsel sincerely urged that appellant's purposes were innocent, and that we should read the facts in this light, we must examine the record to find if substantial evidence shows any act of contribution to the delinquency of a minor; that is our concern. ■ The nature of this problem does not justify a primary regard for appellant's claimed innocent motivation but, instead, concern for the future protection of other young people against induced delinquency.

We affirm the judgment.

Bray, P. J., and Duniway, J., concurred.

A petition for a rehearing was denied September 8, 1960, and appellant's petition for a hearing by the Supreme Court was denied October 5, 1960.