437 P.2d 962

**The STATE of Arizona, Appellee,**

v.

**James A. CUTSHAW, Conrad Forks, Willi-dane Forks, and Dana Snider, Appellants.**

**No. 2 CA–CR 53.**

Court of Appeals of Arizona.

Feb. 8, 1968.

Rehearing Denied March 18, 1968.

Review Denied April 26, 1968.

Darrell F. Smith, The Atty. Gen., Jordan L. Green, Asst. Atty. Gen., William J. Schafer III, County Atty., Pima County, for appellee.

Robert J. Hirsh, Tucson, for appellants.

MOLLOY, Judge.

This is an appeal by four defendants convicted of contributing to the delinquency or dependency of a minor. Numerous assertions of error are made but we believe the question of whether the defendants were properly charged with any criminal offense is dispositive.

The direct information filed charged the four defendants with "* * * the crime of CONTRIBUTING TO DELINQUENCY OR DEPENDENCY OF A MINOR as follows:

"That on or about the 20 day of July 1965, and in Pima County, Arizona, and before the filing of this Information, the said * * * [defendants] did cause, encourage or contribute to the dependency or delinquency as defined by A.R.S. § 13–821, of _____ [name of complaining wit-

ness], a child under the age of eighteen, all in violation of A.R.S. § 13–822."

To this information, the defendants filed a motion to dismiss and a motion for bill of particulars. The motion to dismiss was denied and the motion for bill of particulars was granted. In response to this order, a bill of particulars was filed stating:

"1. R. [this letter is used in this opinion in substitution of the name of the complaining witness], under the age of 18, ran away from her home on or about the 10th of July, 1965.

"2. That on or about the 20th day of July, 1965, defendants took R. to Caruso's Restaurant in Tucson and then took her to the Tucson Airport where they left her."

Thereafter, the defendants filed a motion to quash on the grounds the information, when supplemented by the bill of particulars, did not state an offense.

In response to this motion, the State filed an 8-page pleading which it denominated: "OPPOSITION TO MOTION TO QUASH INFORMATION AND BILL OF PARTICULARS AND SUPPLEMENTAL BILL OF PARTICULARS." Included within this document are argument of counsel, citations to legal authorities, and "the story in this case" which, according to the self-confession of this document, was "lengthy." The "story" began with the statement that:

"R. is an attractive young girl, seventeen in July of 1965. In May of 1965, at a hearing before the Medical Board in Phoenix, Miss R. testified, in the presence of James Cutshaw that during her fifteenth and sixteenth years, Mr. Cutshaw had sexual intercourse with her on three occasions."

The "story" continued through various incidents taking place after May of 1965,

which included R. being placed in a psychiatric hospital on June 10, 1965, her release therefrom to her home on June 25, 1965, her leaving home without the permission of her parents on July 10, 1965, her not being "heard from" again until July 20, 1965, her oral recantation on July 20, 1965, of her testimony before the Medical Board in a telephone conversation to the county attorney's office, her appearance at a restaurant with the defendants on the evening of July 20, 1965, her notarization of an affidavit at the Tucson International Airport at 10:45 p. m., on July 20, 1965, "* * concerning false testimony at a hearing," and the leaving of R., by the defendants, "* * * alone and unaided at the airport" at that time.

The "story" continued with a few further facts interspersed with considerable argument for an additional four pages. The additional facts include a statement that three days after R. ran away from home, she made a written statement branding her testimony before the Medical Board as "* * * a lie," that the defendant Snider was with R. when she wrote out various statements recanting her testimony before the Medical Board, that the defendant Cutshaw had seen R. twice at his home in the company of the other defendants after R. had left home, that R.'s absence from home had been reported to law-enforcement officers and that the defendants knew a search was being conducted for R. but they refused to give information of her whereabouts to the proper authorities.

The supplemental bill concludes with the assertion that a charge had been stated "* * * under any one or a number of subsections of A.R.S. 13–821 such as A [par. 1] (c), (d), (e), (f), (*l*), (m), (q), B, C."[1]

1. The designated subsections read as follows:

§ 13–821(A)

"In this article, unless the context otherwise required:

"1. 'Dependent person' means a person under the age of eighteen years:

* * * * *

"(c) Who is a vagrant.

"(d) Who is found wandering and not having a home, or a settled place of abode, or a guardian or any visible means of subsistence.

"(e) Who has no parent or guardian willing to exercise, or capable of exer-

Argument contained within this supplemental bill would indicate the State contended that the leaving of R. at the Tucson International Airport was a violation of a "loitering" ordinance of the City of Tucson and that " * * * allowing and assisting a child to remain away from home * * * " also constituted the crime of contributing to the delinquency of a minor. There is no indication of how the defendants assisted R. in remaining away from home. There is no allegation that the defendants encouraged R. to make recanting statements or affidavits. There is no assertion that the signing of the affidavit on July 20, 1965, was an act of delinquency, nor any allegation which would negate a belief on the part of the defendants that R. was being truthful when she recanted her testimony before the Medical Board.[2]

After the filing of this "supplemental bill of particulars," the motion to dismiss came before the court for hearing. In his argument at this hearing, the county attorney stated that what he said at that time

was intended to constitute a part of the bill of particulars and this position appears to have been accepted by the trial court. In this argument the assertion is made that the affidavit signed by R. on July 20 " * * is contrary to her testimony in Phoenix." The argument makes no statement, however, that the retraction signed on July 20, rather than the testimony in Phoenix, is false nor is there any reference to the criminal statute, relied upon by the State at time of trial, making it a felony to give contradictory statements under oath. (A.R. S. § 13–562.) Moreover, the argument contains no assertion that the defendants encouraged R. to make this affidavit—only that R. was " * * * in the company of all the defendants * * * " when she notarized the document.

Throughout these proceedings, the State has disclaimed any intention of prosecuting the defendants for any sexual relationships that may have occurred between the defendant Cutshaw and R.,[3] and there is no direct evidence of any such sexual acts in this record.

cising, proper parental control over him.
"(f) Who is destitute.
* * * * *
"(k) Who persistently refuses to obey the reasonable orders or directions of his parent or guardian.
"(l) Who is incorrigible, that is, beyond the control and power of his parents, guardian or custodian by reason of the vicious conduct or nature of the person.
"(m) Whose father is dead, or has abandoned his family, or is an habitual drunkard, or whose father or mother does not provide for such person, and it appears that such person is destitute of a suitable home or adequate means of obtaining an honest living, or who is in danger of being brought up to lead an idle, dissolute and immoral life, or when both parents are dead, or the mother or father, if living, is unable to provide proper support and care of such person.
* * * * *
"(q) Who from any cause is in danger of growing up to lead an idle, dissolute or immoral life.
"B. 'Delinquent person' includes any person under the age of eighteen years

who violates a law of this state, or an ordinance of a county, city or town defining crime.
"C. 'Delinquency' means any act which tends to debase or injure the morals, health or welfare of a child."

2. That this "supplemental bill of particulars" leaves room for the assumption that the defendants were acting under the belief that R.'s recantations were true is evidenced by the following:
"To all Miss R. said she had lied at the hearing in Phoenix. * * * All defendants felt that Miss R.'s parents had coerced her, in some measure, to give the testimony in Phoenix implicating Cutshaw in sexual intercourse with the girl."
Paradoxically, there is no doubt from arguments made throughout the trial, and here on appeal, that the State contends that at least Dr. Cutshaw knew the recantations were false.

3. We would presume this position is mandated by the fact the statute of limitations as to contributing to the delinquency of a minor, a misdemeanor, is one year. A.R.S. § 13–106, subsec. B.

Numerous assertions of error skirt,[4] but do not directly raise, the question of whether the information, as supplemented by the bills of particulars, states an offense. The matter of the sufficiency of the information was raised repeatedly by the defendants in the lower court. After the denial of their motion to dismiss, because of the inadequacy of the bill of particulars and the supplemental bill, the defendants raised the same question at the trial. When the trial commenced, defense counsel indicated he had " * * * no way of knowing what the issues are." At the conclusion of the State's evidence, the same essential position was stated in a motion for a verdict of acquittal. We agree with this contention, and dispose of this appeal on this basis, deeming it immaterial whether this fundamental defect is raised by the appellants' brief, or by this court, sua sponte. State v. Terwilliger, 49 N.J. Super. 149, 139 A.2d 454 (1958); State v. Martin, 54 Or. 403, 100 P. 1106, 103 P. 512 (1909); cf. Jacob v. Cherry, 65 Ariz. 307, 309, 180 P.2d 217 (1947); State v. Taylor, 323 S.W.2d 534 (Mo.App.1959).

The subject statutes have been upheld in the face of an attack that they were unconstitutionally vague. Brockmueller v. State, 86 Ariz. 82, 340 P.2d 992 (1959); Loveland v. State, 53 Ariz. 131, 86 P.2d 942 (1939). However, these statutes, which characterize as criminal, *inter alia:* "* * any act which tends to debase or injure the morals, health or welfare of a child" (A.R.S. § 13–821, subsec. C) are clearly at the periphery of the constitutional spectrum insofar as permissible vagueness is concerned.[5]

Also pertinent to the problem here is the evidentiary rule generally honored in contributing cases that acts tending to contribute to the delinquency of a minor, other than those charged in the information, can be shown in evidence in order to establish the general surroundings under which the acts described in the information took place. People v. Lowell, 77 Cal.App.2d 341, 175 P.2d 846, 848, 77 A.L.R.2d 907 (1946); People v. Oliver, 29 Cal.App. 576, 156 P. 1005 (1916); State v. Seaburg, 154 Me. 162, 145 A.2d 550 (1958); State v. Williams, 236 Or. 18, 386 P.2d 461 (1963); Birdsell v. State, 205 Tenn. 631, 330 S.W.2d 1 (1959); Annot., 77 A.L.R.2d 841, at 907; cf. State v. Pierce, 59 Ariz. 411, 129 P.2d 916 (1942).

In view of this leniency shown by the courts to the introduction of evidence in a contributing case, and the broad encompassment of the statute under which these charges are brought, the right to an adequate bill of particulars takes on even greater significance than in the ordinary criminal prosecution.

The right to be informed of the "nature and cause of the accusation against him" is one of the particular rights guar-

---

4. "1. Can a conviction under ARS 13–821 and 822 be sustained where the only evidence of guilt are passive acts or omissions and where the defendants had no duty in law to act?

"2. Can a conviction under ARS 13–821 and 822 be sustained where there is no evidence of mens rea or criminal intent on the part of the defendants?

"3. Is ARS 13–822 and 823 unconstitutionally vague in that it doesn't sufficiently define the conduct prohibited?

\* \* \* \* \*

"5. Is it error to present evidence outside the scope of the Bill of Particulars without amending the Bill of Particulars to conform with the new evidence presented?

"6. Should the jury be instructed as to the contents of the Bill of Particulars in order to allow the jury to make a determination of the issues involved in the case?

"7. Can more than one crime be charged under one count of an information and still be proper under Rule 128 of the Rules of Criminal Procedure [17 A.R.S.]?"

5. See Stone v. State, 220 Ind. 165, 41 N.E.2d 609 (1942), for a case holding a similar statute unconstitutionally vague, and compare State v. Locks, 97 Ariz. 148, 397 P.2d 949 (1964), and State v. Bowling, 5 Ariz.App. 436, 427 P.2d 928 (1967).

anteed to all those accused of crime in this state. Ariz.Const. art. 2, § 24, A.R.S. Applicable court rule provides that the court "* * * shall, at the request of the defendant, order the county attorney to furnish a bill of particulars * * *" whenever the information fails to inform the defendant "* * * of the particulars of the offense sufficiently to enable him to prepare his defense * * *." Rule 116, R.Crim.P., 17 A.R.S. The right to be informed in writing of the nature of criminal charges is such a fundamental right that it is included within the Fourteenth Amendment guarantees applicable to criminal trials in state courts. Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

■ A defendant in a criminal case is entitled to be formally notified in plain understandable language of the acts or conduct charged to have been criminal so that he may prepare his defense and be protected from double jeopardy. Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1926); State v. Kuhnley, 74 Ariz. 10, 242 P.2d 843 (1952); and see State v. Roy, 40 N.M. 397, 60 P.2d 646, 110 A.L.R. 1 (1936); and 27 Am.Jur. Indictments and Informations § 57, at 623; 42 C.J.S. Indictments and Informations §§ 99 and 100, at 972–984; 4 Wharton's Criminal Law and Procedure § 1762, at 556–59 (Anderson 1957). In Kuhnley, our Supreme Court held an information" * * * fatally defective in that it does not charge the commission of an offense" (74 Ariz. at 14, 242 P.2d at 846) because the information did not include the serial numbers and trade names of sewing machines and typewriters alleged to have been received as stolen property.

■■ Pertinent court rule provides that an offense is sufficiently stated if designated by common-law name or in the language of, or by reference to, statute. Rule 115, R.Crim.P., 17 A.R.S. But modern rules of practice do not supplant constitutional guarantees. People v. Chiafreddo, 381 Ill. 214, 44 N.E.2d 888, 891 (1942). If a defendant

does not demand a bill of particulars, he may be found to have waived the right to be formally charged with the specific facts constituting the alleged offense. State v. Benham, 58 Ariz. 129, 137, 118 P.2d 91, 94 (1941). But no such waiver precludes these defendants who have vigorously pursued their right to be informed of the particulars of these charges. Before analyzing the State's pleadings to determine whether the essentials of any offense were stated, certain collateral questions must be answered.

## IS A BILL OF PARTICULARS AN INTEGRAL PART OF THE INFORMATION?

The majority view in this country appears to be that a bill of particulars is no part of the criminal charge which it elucidates and that if an information is deficient, it may not be rendered sufficient by factual allegations in a bill of particulars. Dunlop v. United States, 165 U.S. 486, 17 S.Ct. 375, 41 L.Ed. 799 (1897); Collins v. United States, 253 F. 609 (9th Cir.1918); State v. Lehigh Valley R. Co., 94 N.J.L. 171, 111 A. 257, 10 A.L.R. 977 (1920); Annot., 10 A.L.R. 982; and see 27 Am.Jur. Indictments and Informations § 112, at 672–73.

■ We believe our own state takes a divergent view to this general law. In State v. Benham, 58 Ariz. 129, 118 P.2d 91 (1941), our Supreme Court said:

"In view of the simplified forms of indictment and information under the new criminal procedure, bills of particulars assume an important place in criminal trials. What was formerly essential to allege in the indictment or information may now be supplied to a defendant in a bill of particulars." 58 Ariz. at 133, 118 P.2d at 93.

This is in accord with the view taken by our sister state of New Mexico. Norton v. Reese, 76 N.M. 602, 417 P.2d 205, 207 (1966); and State v. Roy, 40 N.M. 397, 60 P.2d 646, 657, 110 A.L.R. 1 (1936); accord, Commonwealth v. Burke, 339 Mass.

:521, 159 N.E.2d 856, 77 A.L.R.2d 451 (1959). In *Norton*, the court said:

> "The information and bill of particulars are to be read together as a single instrument constituting the accusation." 417 P.2d at 207.

The very same authorities which hold that a bill of particulars is no part of the information take the view that the bill of particulars limits the proof of the prosecution at the time of trial. United States v. Neff, 212 F.2d 297 (3d Cir.1954); State v. Lehigh Valley R. Co., 94 N.J.L. 171, 111 A. 257, 10 A.L.R. 977 (1920); 27 Am.Jur. Indictments and Informations § 112, at 672; 42 C.J.S. Indictments and Informations § 156(d), at 1103. In 4 Wharton's Criminal Law and Procedure § 1870, at 736 (Anderson 1957), we find the following:

> "A party who has given a bill of particulars must be restricted in his proof upon the trial to the items specified in the bill. When a bill of particulars has been filed in a case, the instructions should confine the consideration of the jury to the evidence supporting the charges stated in the bill." [6]

If this be good law—that proof is limited to the charges in the information as supplemented by the bill of particulars—then we see no logic in a view that would regard a bill of particulars as a thing apart from the information. We believe they must stand or fall together.[7]

IF THE FACTS ALLEGED IN THE INFORMATION AS SUPPLEMENTED BY THE BILL OF PARTICULARS DO NOT CONSTITUTE A CRIME, IS ANY CRIMINAL OFFENSE STATED?

■ The general law is well established that when certain facts are alleged to constitute an offense in an information or indictment and if such facts may all be true, and yet the accused can still be innocent of the crime intended to be charged, the information is fatally defective. State v. Anderson, 242 Or. 457, 410 P.2d 230 (1966); State v. Hughes, 212 Tenn. 644, 371 S.W.2d 445 (1963); 4 Wharton's Criminal Law and Procedure § 1760 (Anderson 1957); 27 Am.Jur. Indictments and Informations § 54, at 621; 42 C.J.S. Indictments and Informations § 130, at 1022; and see State v. Casson, 223 Or. 421, 354 P.2d 815 (1960) (contributing case).

■ We believe this law to be applicable to this information as supplemented by the bill of particulars and that when certain further aspects of the pertinent criminal law are examined, the fatal deficiency of this information is clear.

IS CAUSING A CHILD TO VIOLATE ANY CRIMINAL ORDINANCE IPSO FACTO A VIOLATION OF CONTRIBUTING STATUTE?

Throughout this prosecution, the State has taken the position that anyone who

---

6. We do not intend to pass upon appellants' contention that the jury should have been instructed to limit its consideration to the charges contained in the bill of particulars. In view of our disposition, passing upon this contention is unnecessary, and we refrain from giving the contention sanction. We conceive that the propriety of giving the instruction endorsed in the above quotation from Wharton should be carefully weighed in view of our practice of permitting amendment, even after verdict, to conform to the evidence. Rule 147, R.Crim. P., 17 A.R.S.

7. If we are in error and if this state follows the majority view that a bill of particulars is no part of the information,

then there is substantial authority, under modern rules of criminal practice similar to our own, that if a statute creating a crime does not particularly define " * * the acts constituting the offense created, so that the charge can be plainly understood," a charge in the language of the statute without alleging the facts constituting the offense (as this information does not) is constitutionally and fatally defective. People v. Chiafreddo, 381 Ill. 214, 44 N.E.2d 888, at 891 (1942) (a contributing to dependency case); and see People v. Weber, 335 Ill.App. 215, 81 N.E.2d 5 (1948) (a contributing to delinquency case); also State v. Anderson, 242 Or. 457, 410 P.2d 230 (1966); and 4 Wharton's Criminal Law and Procedure § 1797, at 626–630 (Anderson 1957).

causes, encourages or contributes to a child violating any criminal statute or ordinance is ipso facto guilty of a violation of A.R.S. § 13–822, regardless of intent. This jury was instructed that if the defendants had caused, encouraged or contributed to R.'s violation of either A.R.S. § 13–562 or § 11–34 of the Ordinances of the City of Tucson, *or* if they were responsible for any act which tended to debase or injure the morals, health or welfare of R., they were guilty of the crime charged.

A.R.S. § 13–562 reads as follows:

"A person who, in one or more trials, hearings, investigations, depositions, certifications or declarations, in which making or subscribing statements is required or authorized by law, makes or subscribes two or more material statements under oath, affirmation or other legally binding assertion that the statements are true, when in fact two or more of the statements contradict each other, is guilty of perjury."

The literal wording of this statute requires no criminal intent on the part of the actor, but, in order to preserve the constitutionality of the statute, our Supreme Court has held that " * * * intent or scienter * * * " is required before there can be a violation. State v. Krug, 96 Ariz. 225, 228, 393 P.2d 916 (1964). Under the instructions given this jury, a conviction was mandated even though the affidavit

signed by R. on July 20, was in all respects true, and even though believed by the defendants to be true.[8]

The loitering ordinance as to which the jury was instructed reads as follows:

"It shall be unlawful for any minor under the age of eighteen years to loiter in or upon the public streets, highways, roads, alleys, parks, playgrounds or other public grounds, public places and public buildings, places of amusement and entertainment, vacant lots or other unsupervised places, between the hours of 10:00 p. m. and sunrise of the following day; provided, however, that the provisions of this section do not apply to a minor accompanied by his parent, guardian or other adult person having the care, custody or supervision of the minor, or spouse of such person over twenty-one years of age; or where the minor is on an emergency errand; or where the minor is on legitimate business or activity directed or permitted by his parent, guardian or other adult person having the care, custody or supervision of the minor."

Tucson Code, ch. 11, § 34.[9]

As far as this ordinance is concerned, it was the State's position that merely leaving R., a seventeen and one-half year old girl, unattended at the Tucson Municipal Airport, would be causing her to violate this ordinance and hence this conduct would

---

8. The jury was given these two separate instructions:

"Criminal intent is present whenever a person knowingly and voluntarily performs an act or acts which the law declares to be a crime. It does not require a knowledge that such conduct is wrong and may even exist in the presence of a belief that the act is right and lawful."

"When the evidence shows that a person voluntarily did that which the law forbids, and which it declares to be a crime, he has no defense in the fact, if it be a fact, that he did not know that his act was unlawful or that he believed it to be lawful."

9. If it were critical to this appeal, we would take judicial notice that the Tucson

International Airport is not within the city limits of the City of Tucson. See Pruitt v. Sebastian County Coal & Mining Co., 215 Ark. 673, 222 S.W.2d 50 (1949); cf. State v. Price, 76 Ariz. 385, 265 P.2d 444 (1954). This fact appears to have been overlooked in the trial court. It is possible that the City of Tucson under the provisions of A.R.S. § 9–401 and § 1–7 Tucson City Code had "control" over the city airport, and had posted the appropriate signs required by such statute to make its ordinances effective at that location. These latter are factual matters as to which we would decline to take judicial notice. See Bade v. Drachman, 4 Ariz.App. 55, 68, 417 P.2d 689 (1966).

render the defendants guilty of the contributing statute. This position was accepted by the trial court and, again, there was no instruction requiring any particular intent on the part of the defendants in order to render them so guilty.

 It is our view that this strict an interpretation of the subject statute is not warranted and that fundamental error has been committed by the trial court in taking the view that the causing of a child to violate a criminal statute or ordinance is in and of itself a violation of the contributing statute. We hold that in order to be guilty of contributing to the delinquency of a minor, a person must commit an " * * * act which tends to debase or injure the morals, health or welfare of a child."

The literal language of this statute initially prompts us to at least consider such an interpretation. A.R.S. § 13–822, insofar as contributing to delinquency is concerned, purports to punish " * * * any act * * * " which causes, encourages or contributes to " * * * delinquency of a child *as defined by* § 13–821 * * *." (Emphasis added.) A.R.S. § 13–821 has only one definition of "delinquency":

" 'Delinquency' means any act which tends to debase or injure the morals, health or welfare of a child."

Immediately preceding this definition in the statute is a definition of a "delinquent person":

" 'Delinquent person' includes any person under the age of eighteen years who violates a law of this state, or an ordinance of a county, city or town defining crime."

A.R.S. § 13–821, subsec. B.

There is no reference in the subject statute to a "delinquent person," but in A.R.S. § 13–823 it is provided that in order for a person to be guilty of violating A.R.S. § 13–822, the child affected need not have

actually become "delinquent," and it is to this word that we conceive the statutory definition contained in § 13–821, subsec. B must have reference.

 When the legislature has used a word to which it has given a prescribed definition, that definition should be followed by the courts. County of Pima v. School District No. One, 78 Ariz. 250, 278 P.2d 430 (1954). We see no reason why this rule of construction is not controlling here.

 There are other aids to construction indicating the literal meaning in this statute is the true meaning of the legislatrue. The crime under consideration carries a maximum penalty of one year of imprisonment. If the statute is construed in accordance with the State's contentions, any person who offered a cigarette to a 17-year old,[10] even though he had the bona fide and reasonable belief that the offeree was over 21-years of age, would be subject to being imprisoned for a year. This seems to be an unreasonable interpretation, even in view of the strong public policy in favor of protecting children from immoral influences. An unreasonable interpretation is not to be given when there is a reasonable construction readily available. Ernst v. Collins, 81 Ariz. 178, 302 P.2d 941 (1956).

Our own Supreme Court has said:

"The Arizona statutes prohibit *only* the causing or encouraging of acts *which have the effect of injuring the morals, health or welfare of a child*. Such statutes have a long history of common-law interpretation which renders sufficiently clear and meaningful language which might otherwise be vague and uncertain." (Emphasis added) Brockmueller v. State, 86 Ariz. 82, 84, 340 P.2d 992, 994 (1959).

Similarity of language would suggest that the statutes in question have their origin in the State of California.[11] The comparable

---

10. A.R.S. § 13–844 makes it a misdemeanor for a minor to have in his possession " * * * cigars, cigarettes or cigarette papers * * *."

11. The language of § 1 of ch. 91 of the Session Laws of 1933 (from whence our present A.R.S. § 13–821 originates), is very similar to § 1 of ch. 631 of the Laws

California statute has no provision, similar to our own, limiting the contributing statute to the encouragement of "delinquency." Instead, the California law, by its literal language, punishes any:

> " * * * person who commits any act * * * which * * * tends to cause or encourage any person under the age of 21 years *to come within the provisions of* Sections 600, 601, or 602 of the Welfare and Institutions Code * * *." (Emphasis added) West's Annot.Calif.Penal Code § 272.

Section 602 of the Welfare and Institutions Code provides, in part:

> "Any person under the age of 21 years *who violates any law of this State or of the United States or any ordinance of any city or county of this State defining crime * * * is within the jurisdiction of the juvenile court * * *.*" (Emphasis added) West's Annot.Welfare and Institutions Code, § 602.[12]

Despite this all-inclusive language, the California courts have shied away from

of 1915, 41st Session California Legislature. The substance of this law was still in effect in California at the time of the adoption of our statute in 1933. See Deering, Codes of California Welfare and Institutions Code, 1937, art. 6, § 700. See also "Historical Note" following § 13–821 in A.R.S. 1956.

12. Substantially the same provisions were found in the original Juvenile Court Act of California, §§ 1 and 21 of ch. 631 of the Laws of 1915 and incorporated into §§ 700 and 702 of the Welfare and Institutions Code, Deering California Codes, 1937.

13. In using the expression *"mens rea,"* we do so deliberately, realizing that this Latin expression has an indeterminate meaning. Compare Burdick, Law of Crime, § 129, in which work the expression is equated with "responsible mind" (at 153) or "voluntary will" (at 155); Perkins, Rationale of Mens Rea, 52 Harv.L.Rev. 905 (1939) (in which the author discounts the theory that there is any *mens rea* which is a "state-of-mind-X" common to all crimes not *malum prohibitum*, but deals with the concept as a negative one, i. e., " * * * mens rea will be wanting unless the state of

holding that merely inducing a child to violate any criminal ordinance is in and of itself a violation of the contributing statute. See People v. Deibert, 117 Cal.App.2d 410, 256 P.2d 355, 361 (1953) (cited with approval in *Brockmueller*, 86 Ariz. at 84, 340 P.2d 992).

At least one other state, in construing an analogous statute has refused to apply literal language of its contributing statute to minor violations of criminal law. I. e., Stone v. State, 220 Ind. 165, 41 N.E.2d 609 (1942).

 We conclude that, if the State sufficiently alleged the defendants caused or encouraged R. to violate the criminal statute condemning inconsistent affidavits and Tucson's "loitering" ordinance, these allegations alone would not be sufficient to state an offense under the subject statute.

## IS *MENS REA*[13] A NECESSARY ELEMENT OF CONTRIBUT- STATUTE?

 It is within the power of the State to make certain acts criminal, regard-

mind of the defendant at the time of the alleged offense was free from every factor which would be recognized as sufficient for exculpation * * *."); Hall, General Principles of Criminal Law (2d ed.) (in which an attempt at a workable positive definition is given: "In sum, the essential meaning of *mens rea, i. e. that represented in the intentional doing of a morally wrong act, implying concomitant knowledge of the material facts,* has persisted for centuries." (Emphasis added) Hall, General Principles of Criminal Law (2d ed. 1960) at 83;
1 Russell on Crime (12th ed. Turner 1964) (also taking a positive view: " * * * namely *he must* [in order to have mens rea] *have foreseen that those consequences* [designated as criminal] *would follow or could reasonably be expected to follow as the result of what he was doing or omitting to do.*" (Emphasis in original, at 40.) Despite the admitted inexactitude of the term, we use it as "shorthand" reference to a concept which whether regarded as positive or negative in essence, publicists regard as a *sine qua non* of "all true crime" (quote from Perkins, Rationale of Mens Rea, supra, at 909).

less of the intent with which they are performed. Borderland Construction Co. v. State, 49 Ariz. 523, 68 P.2d 207 (1937). The question of whether a statute condemns conduct, regardless of intent, is initially a problem of ascertaining the legislative intent. United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922); Borderland Construction Co. v. State, 49 Ariz. at 523, 68 P.2d 207; 22 C.J.S. Criminal Law § 30, at 100–101.

But, there are judicial pronouncements of constitutional limits upon the legislature's power to criminalize acts which completely innocent and well-meaning people may do. Application of Markham, 178 Neb. 544, 134 N.W.2d 84 (1965); State v. Strasburg, 60 Wash. 106, 110 P. 1020, 32 L.R.A.,N.S., 1216, Ann.Cas.1912B, 917 (1910); and see 22 C.J.S.Criminal Law § 30, at 103; cf. Robinson v. State of California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). In the area of freedom of expression, our own Supreme Court has recognized limitations upon this power of the legislature in State v. Krug, 96 Ariz. 225, 393 P.2d 916 (1964); and State v. Locks, 91 Ariz. 394, 372 P.2d 724 (1962). In both *Krug* and *Locks,* a *scienter* requirement was implied in order to save [14] the statute.

■ There are many cases holding that, insofar as the age of the child is concerned, contributing statutes fall into the category of *malum prohibitum,* that is, that it is no defense if a defendant did not have knowledge that the victimized child was below the age specified in the statute. Illustrative of these cases are Anderson v. State, Alaska, 384 P.2d 669 (1963); and People v. Reznick, 75 Cal.App.2d 832, 171 P.2d 952 (1946). With this line of authority, we have no quarrel. When a person does an act which reasonable persons should recognize will harm the health or morals of a youth, there is suf-

ficient criminal intent to warrant conviction though the actor for good reason does not realize that the child is below the particular age selected by law as the threshold for criminal sanction. Cf. Regina v. Prince (1875), 13 Cox C.C. 138, LR 2 C.C. 154.

■ However, no case has come to our attention holding that a person may be convicted of contributing to the delinquency of a minor for influencing the minor to do something which, if the surrounding circumstances were as the actor honestly believed them to be, would be completely moral and righteous for the minor to do, regardless of his age. It is in this category that we would place the efforts of persons who seek a retraction of what they believe to be false charges of a sex offense, providing, of course, their efforts are limited to persuasion and do not include encouraging a child to run away from her parents,[15] or to do other acts which may endanger the morals or health of the child.

■ In our system of justice, the requirement of wrongful intent, or *mens rea,* before there can be criminal punishment, is the rule rather than the exception. Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 862, 95 L.Ed. 1137 (1951); and see Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). Slight reflection indicates that no exception was intended here. Were it otherwise, a person who gave a glass of milk to a child, who unbeknownst to the giver, was allergic to the milk, would be subject to imprisonment for a year for injuring the "health" of the child. We hold that before a person can be convicted of having committed an " * * * act which tends to debase or injure the morals, health or welfare of a child," such act must have been committed with "criminal intent" or *"mens rea,"* in the broad intendment of

---

14. As to *Locks,* the words "in an attempt to save" should be used, inasmuch as the Court subsequently struck down this same statute as being unconstitutionally vague. State v. Locks, 97 Ariz. 148, 397 P.2d 949 (1964).

15. For a case holding that encouraging a child to leave home, under the particular circumstances, is a violation of a contributing statute, see People v. Calkins, 48 Cal.App.2d 33, 119 P.2d 142 (1941). See also People v. Hall, 55 Ill.App.2d 113, 204 N.E.2d 40 (1965).

these expressions. See State v. Berry, 101 Ariz. 310, 419 P.2d 337 (1967); and A.R.S. § 13–131.

## DID THE STATE SUFFICIENTLY ALLEGE A "COURSE OF CONDUCT?"

■ We do not reject the State's contention that a violation of the subject statute need not be by a specific act but that the violation may occur through a series of acts or a course of conduct. In a leading case in California, the court said:

"Under the so-called juvenile court law, any conduct upon the part of a person toward a minor which either causes or tends to cause such minor to become or remain a dependent or delinquent person may be shown, and such conduct may consist of one act only or a series of acts. While one of such acts may be sufficient to constitute the specific crime of contributing to the dependency of the minor, a number of different acts *leading to the same result* can have the effect of doing no more." (Emphasis added) People v. Oliver, 29 Cal. App. 576, 156 P. 1005, 1007 (1916).

Other California decisions have taken a similar view, including People v. Moore, 183 Cal.App.2d 672, 7 Cal.Rptr. 142 (1960); People v. Lowell, 77 Cal.App.2d 341, 175 P.2d 846 (1946); People v. Dutra, 75 Cal. App.2d 311, 171 P.2d 41 (1946); and People v. Ferello, 92 Cal.App. 683, 268 P. 915 (1928). Other jurisdictions, with similar statutes, have taken the same view. State v. Griffin, 93 Ohio App. 299, 106 N.E.2d 668 (1952); State v. DuBois, 175 Or. 341, 153 P.2d 521 (1944); and Commonwealth v. Stroik, 175 Pa.Super. 10, 102 A.2d 239 (1954).

■ But, if the State is to rely upon a series of acts or a course of conduct in order to make out a violation of a criminal statute, it must, unless the defendant waives the right to this information, set forth with reasonable clarity the course of conduct alleged to be the violation, and the conduct alleged must be sufficiently related in tendency, People v. Oliver, 29 Cal.App. 576, 156 P. 1005 (1916), and in time, State v. Kuhnley, 74 Ariz. 10, 17, 242 P.2d 843 (1952), so that it may be considered a single criminal offense. See 27 Am.Jur. Indictments and Informations § 124, at 683–85; 42 C.J.S. Indictments and Informations § 162, at 1112–1115.

## IS ARGUMENT OF COUNSEL A PART OF THE BILL OF PARTICULARS?

■ We reject the contention that argument of counsel on the motion to quash must be examined by the defendants to determine the nature of the charges against them. No authority is cited for such a proposition, and we have been able to find only one case tending to support such assertion. This is the case of State v. Benham, 58 Ariz. 129, 118 P.2d 91 (1941), in which it was thought by the court that a bill of particulars had been supplied by the opening statement of the county attorney to the jury. (58 Ariz. at 135, 118 P.2d 91.)

■ In *Benham,* the request for a bill of particulars was not made until the time of trial, after the roll call of the jury. In view of the holding that the defendant had waived his right to a bill of particulars by asking for one "too late" (58 Ariz. at 137, 18 P.2d 91), the thinking-out-loud of the court, in *Benham,* to the effect that the opening statement of counsel constituted a bill of particulars, loses authority. In *Benham,* the manslaughter information named the person killed and the date of the offense. It is doubtful whether any further information was essential for the preparation of the defense, see 26 Am.Jur. Homicide § 246, at 326–27; 40 C.J.S. Homicide § 141, at 1028–1030. When the essentials of an offense have been alleged, the granting of a bill of particulars is discretionary with the trial court. State v. Hart, 61 Ariz. 191, 146 P.2d 211 (1944). When the essentials have not been placed in the formal charges, we hold that argument of counsel cannot supply the deficiency.

**223**

## DISPOSITION

██ The broad principles of criminal law to which we have alluded in this opinion control the disposition of this case. We find no reasonably clear statement of the charges against these defendants. The information refers to statutes which are designedly[16] persuasive in application. The initial "bill of particulars" totally fails to give notice of the thrust of the charges against the defendants. The two incidents described in this document point no finger of blame at any of the defendants. There is no statement that the defendants had anything to do with R.'s leaving home, and the statement the defendant took R. to a restaurant and then left her at the Tucson Airport, without specifying the time, circumstances or purpose of such acts, is completely innocuous.

The so-called "supplemental bill of particulars" fails to serve the purpose of bringing home to the defendants the acts which are alleged to have been criminal. Though there are intimations in this document that the defendants assisted R. to run away, direct allegations are totally lacking and those that are made by implication are commingled inextricably with argument and "story" admittedly collateral to the charges sought to be made. The only course of conduct detailed in this document pertains to R. Relatively, there is very little in this pleading as to what the defendants did other than that they were present at times when R. was doing things which were not inherently immoral or debasing.

Not only is wrongful intent not alleged in this "supplemental bill," but, conversely, *mens rea* is negatived by certain allegations in this pleading. The State's position throughout has been that the defendants, with only the implied exception of the defendant Cutshaw, may very well have believed that R.'s recantations were truthful. The State's formal pleadings make no attempt to separately charge the defendant Cutshaw, so we see no rational grounds for salvaging these nebulous pleadings as to this one defendant.

██ We deem the right of a person charged with crime to be informed clearly and directly of the nature of charges against him to be essential to protect the innocent from conviction of crime. In *Benham,* our Supreme Court said:

"The provisions of the law with reference to furnishing a defendant the facts of the charge against him cannot be ignored or treated lightly. It has always been the law among right-thinking peoples, and we hope will continue to be the law in this land of ours, to require the state fully to inform the accused what he is charged with and to allow him time to prepare his defense, if he has one." 58 Ariz. at 136, 118 P.2d at 94.

For the reasons stated, we hold that the denial of the motion to dismiss the information for failure to state an offense was fundamental error. The judgment below is reversed.

HATHAWAY, C. J., and KRUCKER, J., concur.

16. E. g., A.R.S. § 13–827 requires the subject statute to be " * * * liberally construed in favor of the state for the protection of the child * * *."